SCHUKNECHT, Respondent, v. CHICAGO, M., ST. P. & P. R. CO. et al., Appellants

(48 N. W.2d 917)

(File No. 9090. Opinion filed August 2, 1951)
Rehearing denied October 2, 1951

**Dwight Campbell, Philo Hall,** Aberdeen, for Appellants.
**Sterdahl, May & Boe,** Sioux Falls, for Respondent.

ROBERTS, J. This is an action brought by the widow and administratrix of the estate of her deceased husband, Fred C. Schuknecht, against the Chicago, Milwaukee, St. Paul and Pacific Railroad Company to recover damages for his death caused by a collision at a railroad crossing between an automobile driven by plaintiff's husband and a passenger train operated by the defendant company. The engineer of the train involved in the accident was joined as a party defendant.

As grounds for recovery plaintiff alleged that death "was directly and proximately caused by the negligence of the defendants above named, and each of them, in that at the time and place of said collision no warning signal was given, either by whistle or bell, to warn deceased of the approach of said train, and defendants failed to operate said train with due care and caution at the time and place in question, in that no lookout was maintained, and due care and caution for the safety of travelers upon the highway was not exercised by them." The statute, SDC 52.0924, required the engineer to ring the bell or sound the whistle a distance of 80 rods from the crossing and to continue the ringing of the bell or sounding of the whistle until the crossing was reached.

Defendants answered separately admitting the occurrence of the collision, but denying that they were in any respect negligent and charging deceased with want of ordinary care which caused or at least contributed to the accident.

The case was tried to a jury and a verdict was returned for plaintiff upon which judgment was entered. Defendants appeal.

The question presented for determination on appeal is whether plaintiff's intestate was guilty of contributory negligence as a matter of law. This question was raised in the trial court by motions for directed verdict at the close of plaintiff's case and again at the close of all the evidence and by motion for judgment notwithstanding the verdict. In reviewing the evidence to determine whether the

court erred in refusing to direct a verdict, it is elementary that we must accept the evidence in the light most favorable to plaintiff and accord her the benefit of all reasonable inferences which may be drawn therefrom. Johnson v. Chicago & N. W. Ry. Co., 71 S. D. 132, 22 N.W.2d 725; Haase v. Willers Truck Service, Inc., 72 S. D. 353, 34 N.W.2d 313. We accept for the purpose of this appeal plaintiff's evidence as sufficient to establish her claim of negligence on the part of defendants. It is not necessary to detail the evidence as to the negligence of the defendants.

The accident occurred about 11:30 o'clock in the morning of November 24, 1947, at the intersection of defendant company's railroad track and a graveled highway, known as the Tea-Beresford highway, near Lennox, South Dakota. At this point the highway runs north and south. The railroad track does not cross at right angles, but runs in a southeasterly and northwesterly direction. The track intersects the highway at an angle of about 15° south of due east and north of due west. Decedent approached the crossing from the north driving a Chevrolet coupe and was struck by a westbound passenger train and was instantly killed. The train consisted of a Diesel electric locomotive and four cars. The speed of the train was estimated at 50 miles per hour. There was no eye witness to the accident.

It is the settled law of this state that it is the duty of an automobile driver approaching a railroad crossing to look and listen where looking and listening will be effective and that his failure to do so, without reasonable excuse therefor, is contributory negligence as a matter of law. Buboltz v. Chicago, M. & St. P. Ry. Co., 47 S. D. 512, 199 N. W. 782; Dean v. Chicago, R. I. & P. Ry. Co., 51 S. D. 233, 213 N. W. 6. The failure of an engineer to give statutory signals does not relieve a motorist approaching a railroad crossing of that duty. Plucker v. Chicago, M. & St. P. Ry. Co., 52 S. D. 554, 219 N.W. 254.

Section 44.0305 reads as follows: "The State Highway Commission is hereby authorized to designate particularly dangerous grade crossings of steam or interurban railways by highways and to erect signs thereat notifying drivers of vehicles upon any such highways to come to a complete

stop before crossing such railway tracks, and whenever any such crossing is so designated and signposted it shall be unlawful for the driver of any vehicle to fail to stop within fifty feet but not less than ten feet from such railway tracks before traversing such crossing."

It will be observed that this statute has imposed a duty in addition to those of the common law upon a driver of a vehicle approaching certain railroad crossings. It supplements and does not do away with the exercise of due care in other respects. SDC 44.0304. It is the duty of a driver to stop, as well as look and listen, before going on a crossing designated as a stop crossing.

■ Where no evidence of the conduct of a decedent, either direct or circumstanial, appears, there is in death cases the presumption that he, acting on the instinct of self preservation, was in the exercise of due care. Whaley v. Vidal, 27 S. D. 627, 132 N.W. 242. This presumption, like other presumptions, disappears when evidence is introduced from which facts may be found. It does not remain to create an issue of fact as against such evidence. The presumption may be rebutted by direct or circumstantial evidence to the contrary. Circumstances, in other words, may be sufficient to present an issue of fact for the jury or to demonstrate the existence of contributory negligence as a matter of law. McKiver v. Theo. Hamm Brewing Co., 67 S. D. 613, 297 N. W. 445.

The crossing where the accident in controversy occurred is in an open country. The railroad track is elevated somewhat at the point of the crossing and for some distance east thereof and when a traveler on the highway approaching from the north reaches a point 1200 feet from the crossing he has an unobstructed view to the east for a distance of at least a half mile and this condition remains until he has passed over the crossing. There were the customary cross-arm warning signs and the crossing having been designated as a stop crossing there were also the usual stop signs. In this connection there is reproduced herewith exhibits 7 and 13.

■ Exhibit 7 is a photograph taken from a point about 200 feet north of the crossing. The other photograph was

taken from a point 600 feet north of the crossing and shows a view of the railroad right of way east thereof from which direction the train came. The train shown in this exihibit was approximately 1800 feet east of the crossing. The undisputed evidence shows that so far as natural obstacles are concerned there was an unobstructed view, that the accident happened in daytime and that plaintiff's decedent was familiar with the highway and the crossing in question. These facts standing alone and unexplained would demonstrate that decedent either did not look or if he did, he saw the train and took the chance of crossing ahead of it. As we have observed, decedent was bound to stop, look and listen for an approaching train before attempting to cross the railroad track and the failure of the train crew to give statutory signals would not excuse negligence on his part. These facts showing or tending to show that decedent knew or had the opportunity of knowing of danger overcame the presumption of due care. McKiver v. Theo. Hamm Brewing Co., supra. The presumption applies only in the absence of opposing evidence. It has no application where the evidence shows circumstances of the accident to the contrary.

■ Plaintiff in an effort to explain and excuse decedent's conduct offered evidence of atmospheric conditions at the time of the accident. She claims that because of such conditions decedent's view of the train was materially obstructed and that under such circumstances the issue of his contributory negligence was for the jury. In Merrill v. Minneapolis & St. L. Ry. Co., 27 S. D. 1, 129 N.W. 468, this court dealt with a crossing accident occurring in the evening shortly before sundown. Plaintiff in that case testified that the sun's rays reflected on her glasses, obstructing her view, and that she did not see an approaching train. This court applied the rule that if the view of a train is obstructed by physicial conditions such as buildings and standing freight cars or atmospheric conditions so as to render it impossible or difficult to discover an approaching train in time to stop in a place of safety the question of plaintiff's contributory negligence is for the jury. Plaintiff in that case did stop, look and listen. She was not required as this court observed to stop and wait until the sun went down before

attempting to cross the railroad track and could have taken no other precaution in the way of looking. If a traveler cannot by waiting or by changing his position look effectively, he must then and has a right to rely upon the sense of hearing and if he goes forward after listening for an approaching train and hears no signal or sound of a train, his attempt then to cross a railroad track cannot be adjudged contributory negligence as a matter of law. In the case of Pokora v. Wabash Railway Co., 292 U. S. 98, 54 S.Ct. 580, 581, 78 L.Ed. 1149, 91 A.L.R. 1049, wherein it appears that the view of a crossing was obstructed by standing freight cars, the court said: "In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of the danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would have been in trusting to his ears if vision had been cut off by the darkness of the night. Cf. Norfolk & W. Ry. Co. v. Holbrook, 6 Cir., 27 F.2d 326. Pokora made his crossing in the daytime, but like the traveler by night he used the faculties available to one in his position. * * * A jury, but not the court, might say that with faculties thus limited, he should have found some other means of assuring himself of safety before venturing to cross." However, if there is a temporary obstruction to view, the failure to wait for a reasonable time until it has cleared away, and then to look and listen, may constitute contributory negligence. Baltimore & O. R. Co. v. McClellan, 69 Ohio St. 142, 68 N.E. 816; Fannin v. Minneapolis, St. P. & S. S. M. Ry. Co., 185 Wis. 30, 200 N.W. 651; Heaney v. Long Island R. Co., 112 N.Y. 122, 19 N.E. 422; West Jersey R. Co. v. Ewan, 55 N.J.L. 574, 27 A. 1064. Such an obstruction to the view may consist of smoke, steam, dust, snow or a combination of two or more of these conditions. See annotation in 20 A.L.R. 1064. Where the view of a railroad track was limited by smoke and snow flurries, the court in New York Cent. R. Co. v. Milhiser, Ind.App., 97 N.E.2d 379, 381, held that there was a duty to wait until the atmosphere

cleared. The court said: "All of the decisions we have cited
* * * seem to be predicated upon the fact that smoke is but
a temporary obstruction to view and that ordinary care re-
quires a traveler on the highway to wait until it is dissipated
before attempting to cross a railroad. The fact that the ob-
struction to view, as in the present case, is a combination of
smoke and flurries of snow does not alter the rule. A flurry
of snow is a sudden and brief phenomenon and is as transi-
tory as the smoke itself."

The question herein then narrows down to the nature
of the claimed obstruction and its effect as an excuse for de-
cedent's action.

The evidence is that decedent on the morning of the
accident drove in his Chevrolet coupe to the Tebbo Knock
farm which is about a quarter mile north of the crossing in
question. Having transacted his business with Mr. Knock,
decedent then proceeded south and the unfortunate mishap
occurred. No witness, as we have already stated, saw the
accident and no one testified as to what decedent did with
reference to stopping, looking and listening. The day was
cold and the wind was blowing from the southwest. There
was testimony that visibility, affected by reason of blowing
snow, was limited at times to about 300 feet. Mr. Knock
testified that at the time of the accident it was snowing;
that the wind was "flourishing" and "whipping" the snow
over the ground; and that visibility varied from a quarter
mile to less than 300 feet. The wife of this witness testified
that the visibility on the morning of the accident was ob-
structed by blowing snow to such an extent that at times she
could not see the railroad track to the south. She further
testified that she heard the train coming from the east and
from her kitchen window saw the top of the train just after
the locomotive was over the crossing and that she watched
the train until it had passed another crossing to the west.
The distance between these crossing is about 800 feet.

Benjamin H. Van Loh, a witness for plaintiff, testified
that he heard and saw the train. The house and other
buildings on his farm are a half mile east and approximately
20 rods north of the crossing where the accident occurred.
He was picking corn at the time in a field north of the build-

ings. His observation was made from a point about a half mile north of the railroad right of way and approximately three quarters of a mile diagonally northeast from the scene of the accident. He testified that the "visibility was poor that forenoon"; that a "strong wind" from the southwest "whipped the snow up into a gust" and "rolled up" snow above the tracks "to possibly 10 feet or so"; and that these gusts varied and lasted "a minute or a minute and a half to about four minutes". The witness further testified that he heard and saw the train as it approached when it was "somewhere less than a mile" to the southeast; that he observed it for a "bit over a half a mile"; and that a knoll obstructed his view of the train for a distance of about a half mile east from the crossing. As to his view of the train he testified: "Q. And can you tell the jury in your own words just what visibility you had of that train? A. Yes, I can. It's rather hard, possibly, to put into—paint a picture into words exactly as it looked to me, but I'll try my best. Being with this foggy, poor visibility condition, the first glimpse I had of the train was appearing—what appeared like coming out of a fog, and I could see the side of the train. I could make out its color; I could make out the full length of the train, but not too definitely."

Kenneth Clark, an employee of the United States Weather Bureau, at Sioux Falls, testified that at 10:30, the morning of the accident, the temperature was 11 degrees and the wind was southwest, 12 miles an hour; that at 11:28 A.M., light snow was reported, the temperature was 13 degrees and the wind was southwest, 15 miles an hour; that at 12:25 P.M., the temperature was 14 degrees, and the wind was south-southwest, 20 miles an hour; and that during these hours, there was no blowing snow reported.

Leo Rutten, a passenger on the train, testified, for defendant, that he saw a car approaching the crossing from the north; that it passed out of his range of vision; that as the train passed over the crossing he was unable to see the car on the highway on either side of the crossing; and that he expressed concern to another passenger and the brakeman as to whether the car had crossed over ahead of the train.

■■ Counsel for plaintiff contend that the jury could have taken the view that decedent looking and listening, after stopping at the crossing as the statute requires, could not see or hear the oncoming train in time to avoid the collision. Taking the view of the evidence most favorable to the plaintiff the jury was warranted in believing that the morning was cold and cloudy, that there was some snow falling at the time of the accident, that the wind from the southwest caused loose snow to swirl over the railroad track, and that visibility at times was limited to less than 300 feet. If we rightly understand plaintiff's testimony, the poor visibility was caused mainly by gusts of wind swirling loose snow from the ground. The amount of snow falling and the condition of the weather was not such as continuously to prevent a fairly clear view of an approaching train. The testimony of the weather observer was that a wind from the southwest was blowing at the rate of 15 miles an hour. It is common knowledge that a wind of that velocity is moderate. We find no evidence to indicate that there was a blinding swirl of snow at the crossing when decedent proceeded to cross. The passenger who saw the car approaching from the north testified that he could see it without difficulty. We cannot escape the conclusion that if snow temporarily obstructed decedent's view he should have waited for it to subside before attempting to cross. The witness Van Loh, from a point about a half mile north of the track, first saw the train when it was about a mile distant to the southeast and could see it until his view was obstructed by a rise in the land. The train when the knoll interfered with his view was less than a half mile from the crossing. Traveling at the undisputed rate of 50 miles per hour, the train was seen by Mrs. Knock about thirty seconds later when the locomotive had passed over the crossing. There is no reason to believe that decedent by the exercise of due care could not have seen what these witnesses saw. Counsel for plaintiff place some stress on the angle at which a train from the east is observable to a traveler approaching the crossing from the north. It appears from photographs in addition to other evidence that a train approaching from that direction is clearly observable and that the condition would not be substantially different if the track intersected the highway at right angles.

 It is contended by plaintiff that the reasoning which prevailed in the case of Clark v. Union Pac. R. Co., 70 Utah 29, 257 P. 1050, 1056, is applicable to the facts of the instant case. It may be noted that the court in that case discussed the rule which we feel impelled to follow. It is there said: "Where a traveler, knowing that he is approaching a railroad crossing and with an unobstructed view of the track in both directions, and there being nothing to prevent his hearing or seeing an approaching train, advances to and upon the intersection without looking and listening, his conduct will generally impute negligence to him as matter of law." Plaintiff's intestate in that case was killed while crossing a railroad track in a dense fog and under the evidence viewed most favorable to plaintiff "the deceased, looking and listening when but 75 or 50 feet or less from the crossing, could not have seen an approaching train traveling three of four times the speed the deceased was going, and have discovered it in time to have avoided the collision." The factual difference in that case and the present case is readily apparent.

 We conclude therefore that if after stopping at the crossing decedent had properly exercised his faculty of sight he would have seen the train and was therefore guilty of contributory negligence as a matter of law.

The judgment of the court below is reversed and the cause remanded with directions to dismiss the action.

RUDOLPH, P. J., and SMITH, J., concur.
LEEDOM, J., not sitting.
SICKEL, J., dissents.