WOOLEY, Appellant, v. CHICAGO & N. W. R. CO., Respondent

(50 N. W.2d 644)

(File No. 9237. Opinion filed December 13, 1951)

Rehearing denied February 18, 1952

**C. M. Carroll,** Miller, for Plaintiff and Appellant.

**Churchill & Churchill,** Huron, for Defendant and Respondent.

ROBERTS, J.   On March 12, 1949, Ruth D. Wooley was killed. as the result of a collision between an automobile driven by her and a freight train operated by the Chicago & North Western Railway Company.   The accident occurred at the intersection of the main street of Ree Heights, South Dakota, and the tracks of the defendant company.   Harrold W. Wooley, husband of decedent, was appointed special administrator of her estate and brought this action seeking to recover damages for death by alleged wrongful act.   The engineer and the conductor in charge of the train involved in the accident were also named as defendants.   At the close of plaintiff's evidence and again at the close of all the evidence defendants made motions for directed verdict, both of which motions were overruled, and the cause was submitted to the jury which returned a verdict for the plaintiff and against the railway company for the sum of $3460, but the verdict was silent as to the other defendants.   The motion of the defendants not referred to in the verdict for a judgment of dismissal was sustained.   Defendant company moved for judgment notwithstanding the verdict.   The motion was granted and plaintiff appeals from the judgment.

It is the contention of plaintiff that the absence of a flagman at the crossing and the failure to provide automatic signals could be taken into consideration by the jury in determining whether under all the circumstances decedent failed to exercise reasonable care and that the evidence justified the jury in finding that decedent relying on the custom of the freight train to slacken its speed and stop at Ree Heights concluded that she had ample time to clear the crossing and that contrary to such custom the train approached the crossing at a high rate of speed.   The questions

presented on appeal are whether the evidence sustains a finding of negligence on the part of the railway company and whether decedent was guilty of contributory negligence as a matter of law. It is conceded that in considering these issues this court must view the evidence in the light most favorable to the plaintiff and that all conflicts must be resolved and all permissible inferences from the evidence must be drawn in favor of the plaintiff.

The tracks of defendant company run approximately east and west at the point in question and the street north and south. Decedent was familiar with the crossing having resided several years on a farm two miles southeast of Ree Heights and having traveled frequently over the crossing.

Decedent approached the crossing from the south. The train was coming from the west at a rate of speed estimated at 35 miles an hour. The nearest building south of the tracks on the west side of main street is the post office. It is 327 feet from the main line track. The view to the west between this building and the crossing so far as other structures are concerned is obstructed only by the depot which is a one-story building 22 by 48 feet and is approximately 200 feet west from the center of main street. Other obstacles such as the telegraph poles paralleling the track and three trees located immediately west of the depot which were bare of foliage at the time of the accident did not appreciably obscure the view. The street and the terrain to the west are practically level. When decedent had driven past the post office, she had an unobstructed view of the track to the west for a distance of a mile or more and this contention remained until she reached a point 75 feet south of the crossing. The depot then obstructed her view to the west. The evidence further shows that from a point 50 feet south of the track there is an unobstructed view in the direction from which the train was coming of 297 feet and from that point to the crossing the range of vision increases. It is apparent that the depot could not have concealed the movement of the train consisting of a Diesel locomotive and 29 cars having a total length of slightly more than a quarter of a mile. There were no other vehicles near the crossing or other conditions interfering with traffic. The day was

cloudy, but visibility was not appreciably limited because of atmospheric conditions. There were no distracting circumstances.

There is a section line highway a quarter mile west of main street. Both the engineer and brakeman testified that as the train approached this section line highway the automatic bell ringer was turned on and the bell continued to ring until the train came to a stop after the accident. The last of four blasts of the whistle was sounded after the highway crossing was reached according to the testimony of the engineer and he then began to repeat two long and two short blasts of the whistle for the main street crossing. There was no negative testimony as to the warning signals. Two witnesses for the plaintiff admitted that they heard the sound of the whistle. The engineer was unable to stop the train after he discovered decedent's peril. Mrs. Wooley was fatally injured and did not fully regain consciousness although she lived for several hours.

■ The law imposes upon an automobile driver approaching a railway crossing the duty of exercising his senses for the purpose of determining whether he can cross the track in safety. A failure to do so constitutes contributory negligence as a matter of law. Ulrickson v. Chicago, M., St. P. & P. Ry. Co., 64 S. D. 476, 268 N.W. 369; Johnson v. Chicago & Northwestern Ry. Co., 71 S. D. 132, 22 N.W.2d 725; Schuknecht v. Chicago, M., St. P. & P. R. Co., 74 S.D. 61, 48 N.W.2d 917, and cases cited. The rights and duties of railroads and travelers upon highway crossings are reciprocal. Neither has the exclusive right of passage. The danger is great and the care required of both is commensurate thereto.

■ It is argued that in determining whether or not decedent was guilty of want of ordinary care the jury could take into consideration the absence of a flagman at the crossing. There is some evidence that the station agent occasionally gave warnings at the crossing of approaching trains. We shall not stop to consider whether the duty which the law imposes upon a traveler to exercise his senses to discover the approach of a train is lessened by reliance upon the usual maintenance of a flagman or whether in other words

the withdrawal of a customary flagman is an indication of safety upon which a traveler may rely. Because of occasional warning decedent could not assume the usual maintenance of a flagman. As was said in Waitkus v. Chicago & N. W. Ry. Co., 204 Wis. 566, 236 N.W. 531, 533, 237 N.W. 259, wherein the evidence showed that a flagman was maintained at certain times of the day and the accident occurred after the flagman had left: "In this case no flagman was maintained at this crossing after 6 o'clock p. m. If the deceased knew what the custom really was, he could place no reliance upon it, because he was charged with knowledge that there was no flagman there at the time of the accident. However, it is argued that he did know that a flagman was customarily maintained in the daytime. This inference may be permissible from testimony to the effect that he had crossed this crossing in the daytime when the flagman was present. But upon the evidence in this case, would the jury be permitted to find that he did place any reliance upon this custom at the time in question, and, if so, could they be permitted to find that he was justified in so relying? In order to justify such reliance, it is necessary to permit the deceased to assume a custom which did not in fact obtain. It would permit him to assume that, because a flagman was maintained at this crossing as certain times of the day, he was maintained there every hour of the day. This might be permissible if such be the general custom. There is no evidence to show that, where a flagman is maintained during the daytime when the traffic is heavy, he is generally so maintained during the night when there is little or no traffic. In the absence of such a custom, there was no reasonable basis for such an inference if it was in fact indulged and relied upon."

■ Plaintiff cites and relies upon Licha v. Northern Pac. Ry. Co., 201 Minn. 427, 276 N.W. 813, wherein it was held that ordinary prudence may require safety devices at crossings in addition to those required by statute. The ruling is not here applicable. The evidence does not show that the crossing was more than ordinarily hazardous and dangerous and one requiring the stationing of a flagman or the installation of automatic signals.

■■ We have considered and given weight to the

argument of counsel that the jury could have found that decedent had reason to assume that the train would stop at the depot and that the slackening of its speed in so doing would.have permitted decedent to clear the crossing. If decedent exercised due care for her own safety, she looked and listened when she reached a point where she had an unobstructed view of the track. If she looked, she saw the train approaching. If she saw it, she must have concluded that it was safe for her to cross. There may be circumstances where the driver of an automobile makes observation, determines that he can safely cross and could, as a matter of fact, have done so but for an unexpected happening caused by the action of the defendant. A typical case is Peyla v. Duluth, M. & I. R. R. Co., 218 Minn. 196, 15 N.W.2d 518, 154 A.L.R. 505, cited and relied upon by plaintiff. Plaintiff in that case observed a railroad speeder approaching and started across the track ahead of it when it appeared that he could safely do so, but the speeder contrary to the custom of slowing down at the crossing suddenly increased its speed and a collision occurred. The court in that case concluded that the attempt of the plaintiff to cross in front of the speeder was not contributory negligence as a matter of law. In the instant case, there was no evidence from which the jury could find that the eastbound freight train made scheduled or customary stops at Ree Heights. Decedent had no right to assume that the train would stop at the depot.

The evidence beyond reasonable dispute shows that decedent was guilty of more than slight negligence which under the so-called comparative negligence statute defeats a recovery and required the setting aside of the verdict returned.

We find no reversible error and the judgment entered notwithstanding the verdict is affirmed.

RUDOLPH, P. J., and SMITH and LEEDOM, JJ., concur.

SICKEL, J., dissents.

SICKEL, J. (dissenting). The question here presented is whether decedent was negligent in failing to avoid the

collision at the railroad crossing. The majority opinion states that "When decedent had driven past the post office, she had an unobstructed view of the track to the west for a distance of a mile or more and this condition remained until she reached a point 75 feet south of the crossing. The depot then obstructed her view to the west."

The blue print introduced in evidence at the trial shows the depot to be a building 22 feet wide and 48 feet long located on the south side of the track and 150 feet west of the street upon which decedent was traveling; that at a point 75 feet south of the crossing and at the center of the highway decedent's vision of the tracks was obstructed by the depot from a point 250 feet west of the place of observation, to a point 740 feet west of the same place, or a total distance of 490 feet. In addition, her view was further obscured by three cottonwood trees located west of the depot. As she approached the crossing her visibility of the tracks to the west of the depot decreased and to the east of it increased. It is true that the depot and the cottonwood trees could not conceal the entire train from decedent's view from any particular position after she passed the drugstore. There is no evidence to show the distance between decedent and the railroad tracks at the time the train came from behind the depot into her range of vision.

This had for many years been regarded by the employees of the railroad company and others as a dangerous crossing. There was a crossbuck sign at the crossing, but no stop sign or other warning of danger. The company was aware of the need for a warning signal at the crossing, but failed and neglected to install it, leaving the determination to the state highway commission.

This was a local freight train. It was the practice to stop at the station unless there was no business of loading or unloading to be done. When it stopped at the station on the eastward trip the engine would be stationed near but west of the street. Decedent resided two miles from the town. She was familiar with the crossing and had passed that way many times during the years. It is therefore fair to assume that she had often seen the train standing in this

position. It may be true that decedent had no right to assume that the train would stop at the depot. She did, however, have the right to assume that the train would either stop at the depot or that it would reduce its speed to a reasonable rate under the circumstances, and in either case she could have crossed the tracks in safety.

It is undisputed that the train was traveling at about 35 miles per hour as it approached the town and this speed was not reduced before the accident. The speed of decedent's car has not been shown but she approached the crossing through the main street of the town and her car skidded a distance of 32 or 36 feet on all four wheels, before being struck by the train, and there is no evidence, circumstantial cr otherwise, to show that her speed was excessive.

To say that had she looked she could have seen the train as it approached the depot from the west is not enough. Even if she did look and did observe the train as it approached the depot it would not necessarily follow that she could or should accurately judge the speed of the train at that point and thereby determine whether it would stop at the depot, or that it would pass through the town without reducing its speed to a reasonable rate. It is quite obvious that when the train emerged from behind the depot and when it became apparent that it was neither going to stop nor reduce its speed it was then too late for decedent to avoid the collision. By failure to stop at the station or to reduce the speed of the train the defendant introduced a danger where none existed before. Peyla v. Duluth, M. & I. R. R. Co., 218 Minn. 196, 15 N.W.2d 518, 154 A.L.R. 505.

It is therefore my opinion that the negligence of the defendant was the proximate cause of the collision; that the attempt of decedent to cross the tracks was not negligence as a matter of law and that the circuit court erred in granting defendant's motion for judgment notwithstanding the verdict.