WILSON, Plaintiff and Appellant

v.

GREAT NORTHERN RAILWAY COMPANY,
Defendant and Third-Party Plaintiff and Respondent

v.

CHRISTOPHERSON, Third-Party Defendant

(157 N.W.2d 19)

(File No. 10394. Opinion filed March 18, 1968)

**Willy, Pruitt & Matthews, Gene E. Pruitt,** Sioux Falls, for plaintiff and appellant.

**Richard V. Wicka,** St. Paul, Minn., **H. F. Chapman,** Sioux Falls, for defendant and third-party plaintiff and respondent.

**Woods, Fuller, Shultz & Smith, John B. Shultz,** Sioux Falls, for third-party defendant.

HOMEYER, Judge.

This is an appeal from a summary judgment granted to the defendant, Great Northern Railway Company, in an action by plaintiff to recover for personal injuries sustained in a truck-train collision.

The accident occurred about 3:10 p. m. on December 24, 1964, at a railroad crossing on South Dakota Highway #25 about three miles southwest of the town of Vienna. The train was pro-

ceeding in a northeasterly direction and the truck approached the crossing from the north. The highway is basically level for several hundred feet north of the crossing. The terrain is also basically level east and west of the highway for a considerable distance north of the railroad track. Immediately south of the crossing the highway and the ground generally on each side thereof, rises, looks dark and as if plowed, and is somewhat higher than the railroad's trackage. There are also some trees and brush south of the railroad and at some distance west of the crossing.

The plaintiff, Hadleigh C. Wilson, was 56 years old at the time of the accident and engaged in the painting and decorating business at Sioux Falls. He contracted a school job at Aberdeen and began work on it in March 1964. Robert F. Hegge was foreman on the job and it was customary for Wilson and Hegge to commute between Aberdeen and Sioux Falls over weekends and for holidays. Hegge usually drove the van type truck involved in the collision over the same route on these trips. Hegge was driving when the accident happened with Wilson seated beside him in a bucket seat. They had never seen a train at the crossing before. Hegge was killed in the accident. That a master-servant relationship existed when the accident occurred is unquestioned.

The complaint alleged that the defendant "operated its train in a careless and negligent manner in that among other things said defendant operated its train at a dangerous rate of speed in view of the circumstances then existing, failed to keep a proper lookout for users of the highway, failed to have its train under proper control, maintained no warnings, gave no signal to users of the highway of its approach and failed to yield the right-of-way to the vehicle in which plaintiff was a passenger." Defendant by its answer put in issue the charge of negligence and further pleaded "that plaintiff's injuries, if any, were caused solely and proximately by the negligence and carelessness * * * in which * * * Hegge was operating the vehicle in which plaintiff was riding * * * at the time said collision occurred." Contributory negligence by plaintiff is not

alleged.[1] Neither is it specifically alleged that Hegge was contributorily negligent and that such negligence is imputed to plaintiff barring recovery. However, we elect to treat defendant's pleading as placing in issue the defense of Hegge's imputed contributory negligence.

Defendant moved for summary judgment under 56(c) of the South Dakota Rules of Civil Procedure[2] on the ground that there existed "no genuine issue as to any material fact." To support his position, the movant relied largely upon a pretrial deposition of plaintiff, an affidavit of an employee of defendant who made a plat of the intersection and took some photographs of the crossing and the area around it on January 5, 1965, which are attached to such affidavit. The record also contains interrogatories submitted and answered by the respective parties. It is admitted this was the fourth fatality at this crossing within a 15-year period.

Summary judgment is a comparatively new procedure in this state and became a part of our practice when we adopted the federal rules of civil procedure with a few minor variations. Consequently we turn to the federal court decisions for guidance in their application and interpretation. In an opinion rendered shortly after the adoption of the federal rules, the late Judge Gardner wrote: "The question presented by such a motion is whether or not there is a genuine issue of fact. It does not contemplate that the court shall decide such issue of fact, but shall determine only whether one exists."[3] The trial court chose to enter findings of fact and conclusions of law. Since a summary judgment presupposes there is no genuine issue of fact, findings of fact and conclusions of law are unnecessary.[4]

---

1. The trial court determined plaintiff himself was guilty of contributory negligence as a matter of law although not pleaded. We find it unnecessary to discuss this phase of the case. However, it is our opinion that upon the record before us, summary judgment would not be justified on this basis. See Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924—on duty of occupant as compared to driver.

2. The South Dakota Rules of Civil Procedure were made effective on July 1, 1966 by the Order of the Supreme Court dated March 29, 1966. They will be hereafter cited as RCP; see Rule 85.

3. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101.

4. Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881. See also 52(a) RCP.

212

■ Certain guiding principles on the use of summary judgment have evolved. They are: (1) The evidence must be viewed most favorable to the nonmoving party;[5] (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;[6] (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists.[7] (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them.[8] (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant.[9] (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses.[10]

■ Summary judgment may be used in all types of litigation, but there are some kinds of cases which lend themselves more readily to summary adjudication than others. Statistics show it is granted more frequently in actions on notes and for debts than in other kinds of cases. Three classes of litigation which are not usually suited for summary disposition are (1) negligence actions, (2) actions involving state of mind, (3) equitable actions.[11]

■ Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must

---

5. 6 Moore's Federal Practice, 2d Ed., § 56.15(3); Barron & Holtzoff, Rules Ed., § 1235, and cases cited in each text.
6. Ramsouer v. Midland Valley R. Co., supra; Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967.
7. Hoffman v. Babbitt Bros. Trading Co., 9 Cir., 203 F.2d 636, 637.
8. Union Transfer Co. v. Riss & Co., 8 Cir., 218 F.2d 553.
9. Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167.
10. American Surety Co., v. Fazel, D.C., Iowa, 20 F.R.D. 110 (action to recover amount paid on bond).
11. 3 Barron & Holtzoff, Federal Practice & Procedure, Rules Ed., § 1232 et seq.

be applied to conflicting testimony.[12] Issues of negligence and such related issues as wanton or contributory negligence are ordinarily not susceptible of summary adjudication either for or against a claimant and should be resolved by trial in the ordinary manner.[13] Summary judgment should not be granted on the ground of contributory negligence except in an extraordinary, unusual, or rare case where the facts are conceded or demonstrated beyond reasonable question and show a right to summary judgment with such clarity as to leave no room for controversy.[14] Contributory negligence to bar recovery must be the proximate cause of the injury and since both are fact questions generally are not subject to summary adjudication.[15]

This court has repeatedly said that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury. It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely.[16]

For the purpose of the motion, as defendant states in its brief, plaintiff's allegations of negligence are admitted, but it is claimed that Hegge's negligence was more than slight as a matter of law and proximately caused or contributed to cause the accident and barred plaintiff from recovering. Our attention is directed to numerous railroad crossing cases decided by this court and defendant argues therefrom that Hegge's contributory negligence is so clearly established by plaintiff's pretrial deposition and the plats and photographs submitted so as to preclude plaintiff from proceeding to trial. No particular benefit would be derived from reviewing or analyzing the considerable number

12. 3 Barron & Holtzoff, Federal Practice & Procedure, Rules Ed., § 1232.1.
13. 6 Moore's Federal Practice, 2d Ed., § 56.17(42).
14. 35B C.J.S. Federal Civil Procedure, § 1181, p. 587; Kennedy v. Bennett, 8 Cir., 261 F.2d 20.
15. Gauck v. Meleski, 5 Cir., 346 F.2d 433.
16. Stygles v. Ellis, 80 S.D. 346, 123 N.W.2d 348; Raverty v. Goetz, 82 S.D. 192, 143 N.W.2d 859; Bogh v. Beadles, 79 S.D. 23, 107 N.W.2d 342; Bothern v. Peterson, 83 S.D. 84, 155 N.W.2d 308.

of cases where jury verdicts against railroads have been set aside and the few cases where recovery has been allowed. Suffice it to say none was disposed of by a summary judgment.

■ The rule is well established in this state that if Hegge saw, or in the exercise of ordinary care should have seen, the approaching train and heedlessly and carelessly drove the truck onto the track so as to collide with the on-coming train, such negligence would bar recovery. However, if he was unaware of the approach of such train and in the exercise of ordinary care could not have seen and discovered such train, he would not necessarily be negligent, or more than slightly negligent.

In several cases involving motor vehicle collisions, this court has had occasion to consider the duty to see factor and excuses for not seeing.[17] In Dwyer, Judge Rentto wrote for the court: "If an object is so well camouflaged as not to be discernible within the range of a driver's vision he may not be held to the duty of seeing it. On the other hand a driver may not be excused for failing to see an object on the road ahead which because of lights or other devices is or should be readily apparent to him. These are the extremes of discernibleness. In between these extremes fall the cases in which it is impossible to say, as a matter of law, what the driver's duty of discernment is. In those instances the determination is for the jury. Under the circumstances here existing we cannot say as a matter of law that the plaintiff was guilty of more than slight negligence."

In his deposition plaintiff, although not driving, repeatedly and consistently maintained because of coloring of the train, the topography of the area, the skyline, location of the trackage and otherwise, the train was not discernible until almost on the crossing. The following questions and answers are illustrative:

"Q Will you tell us now, please, Mr. Wilson, what you recall about this accident as you approached the Great Northern tracks from the north going south?

---

17. Winburn v. Vander Vorst, 75 S.D. 111, 59 N.W.2d 819; Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734.

"A Well, all I can tell you is that if you are familiar with the location, you know that there is a change in the level of the road bed, the south of the tracks is at a greater elevation than the north, and yet the intersection takes place right at the bottom of this rather abrupt rise so there is a space along the highway where you cannot see a train coming so you must depend upon your ears, and in this case the railroad people did not blow their whistle; so then it was quite a surprize to us to see a train appear and we couldn't stop soon enough. We almost cleared, but we didn't quite make it. * * *

"Q Did you observe that this was an orange and green Great Northern Engine that was pulling this train?

"A It·isn't orange and green. It blends pretty well with the highway or the landscape. It was basically yellow, but so smoked that it pretty well blended with the landscape on a winter's day. * * *

"Q Mr. Wilson, would you think back, please, to the time immediately prior to the accident and tell us, if you recall, what it was that directed your attention to the Great Northern train when you first observed it as you approached the crossing from the north going south?

"A Well, you can see it but too late as it comes around the contour of the earth."

His affidavit in resisting the motion for summary judgment was of like import. Additionally in his affidavit he swore "it was a dark, gray day with some snow flurries, and that as a result of such atmospheric conditions, visibility was not as good as it would have been upon a clear day; * *". He also stated therein that the photographs taken by defendant's employee about two weeks after the accident were taken under different atmospheric conditions and did not portray the situation as it existed that day. Commenting on use of photographs in a rail-

road crossing accident case, we said in Johnson, v. C. & N. W. Ry. Co., 71 S.D. 132, 22 N.W.2d 725: "Photographs taken at, or about the time of an accident, are admissible in evidence; and it is usually held that such photographs are received in explanation of the facts and circumstances developed upon trial. Note 55 A.L.R. 1343. We do not think that the photographs are conclusive in this case."

Plaintiff also contends he had a submissible case under the doctrine of last clear chance. For this he must rely largely upon the defendant's answers to interrogatories:

"Q. When did you first see plaintiff prior to the accident of December 24, 1964? A. Plaintiff's motor vehicle was seen approaching the crossing from the north as defendant Great Northern Railway Company's train approached the crossing from the west.

"Q. What distance was the engine of the train from the intersection and what distance was the Wilson vehicle from the intersection when you first saw it? A. When defendant Great Northern Railway Company's train was approximately 200 feet from the crossing, plaintiff's motor vehicle was approximately 300 feet north of the crossing."

The record further shows plaintiff's vehicle was traveling about 55 to 60 miles per hour and the train was moving about 25 miles per hour.

The doctrine of last clear chance has been infrequently applied by courts in this state and not many cases when the facts have been developed require submission under the doctrine. Nevertheless, it has been recognized that under certain factual situations it might be "within the province of the jury to find that the negligence of defendant after discovering plaintiff's peril was the proximate cause of her injuries."[18] Because of the limited record before us on this aspect of the case and

18. Nielsen v. Richman, 68 S.D. 104, 299 N.W. 74.

the probability facts pertaining thereto will be fully developed upon trial, we express no opinion relative to its applicability.

■■■ Much of the argument in the trial court and in this court pertained to whether or not the contributory negligence, if there was any, of Hegge, was imputed to plaintiff. The court has been referred to the recent Minnesota case where that court within limits has repudiated the "both-ways" test involving a master-servant relationship.[19] The trial court considered the negligence of Hegge as imputed to plaintiff. We hold there was no error in this regard. The relationship of these men and the facts attendant when the collision occurred were such to justify the trial court in stating as a matter of law that any negligence of the driver was imputed to plaintiff.

■■■ We hold that upon the record before us and giving the plaintiff the benefit of a most favorable view of the evidence and all reasonable inferences which may be drawn therefrom that there is a genuine issue of material fact on the issues of contributory negligence and the comparative extent thereof and proximate cause. Consequently, the trial court erred when it entered summary judgment dismissing plaintiff's action.

The judgment is reversed and the cause remanded for trial.

RENTTO and BIEGELMEIER, JJ., concur.

HANSON, P. J., and ROBERTS, J., dissent.

HANSON, Presiding Judge (dissenting).

Summary judgment is a relatively new addition to our rules of civil practice. It may be conceded to be an extreme and drastic pretrial remedy which should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCP 56(c). Furthermore, issues of negligence, contributory negligence, and proxi-

---

19. Weber v. Stokely-Van Camp, Inc., 274 Minn. 482, 144 N.W.2d 540.

mate cause are not ordinarily susceptible to summary adjudication. 6 Moore's Federal Practice 2d Ed., § 56.17(42), pages 2583-2584 and cases cited therein. "Questions like these become matters of law to be decided summarily or after trial only when reasonable minds could not differ as to the facts and the inferences to be drawn therefrom. Thus, a summary judgment, like a directed verdict, is unwarranted unless the court is convinced from the proof that the jury could arrive at but one conclusion, and if it did otherwise the court would be compelled to render judgment n. o. v." Lopez v. Denver & Rio Grande Western Railroad Co., 277 F.2d 830, 10 Cir. Nevertheless, summary judgment may properly be rendered in personal injury actions where plaintiff's conduct constitutes contributory negligence as a matter of law. This rule has been applied in railway crossing accident cases: Lopez v. Denver & Rio Grande Western Railroad Co., supra; Miller v. Union Pac. R. Co., 196 F.2d 333, 10 Cir.; and Shelite v. Chicago, Rock Island and Pac. R. R. Co., 307 F.2d 48, 10 Cir.

The record shows the following undisputed facts:

Plaintiff, Hadleigh C. Wilson, owns and operates a painting and decorating business in Sioux Falls. For many years Robert E. Hegge was employed as foreman. In March 1964 plaintiff obtained a contract to paint a school building in Aberdeen. In performing this work it was customary for plaintiff and Hegge to ride together from Sioux Falls to Aberdeen in a panel truck owned by plaintiff. Generally they took the same route each time and were familiar with Highway 25 where it intersects defendant's railway track near Vienna.

On December 24, 1964, plaintiff and Hegge were returning to Sioux Falls for the Christmas holidays. They left Aberdeen shortly after noon. Hegge was driving the truck as usual and plaintiff was riding in the right front seat. It was a dark, gray day with some snow flurries. However, the highway was clear and visibility was good.

As plaintiff and Hegge proceeded south on Highway 25 about 3 o'clock in the afternoon they carried on a limited con-

versation. Hegge was driving between 55 and 65 miles per hour. When approximately 100 feet north of the tracks they saw defendant's train for the first time. It was approaching from the southwest about 80 to 100 feet from the crossing. Hegge immediately applied his brakes and tried to avoid the accident. They heard no train whistle or bell. The engine of the train was originally yellow, but was smoked up and tended to blend into the background. The train was traveling about 25 miles per hour. The panel truck collided with the left rear side of the diesel engine. This was the fourth fatal accident at this particular crossing over a period of 16 years.

Defendant's tracks cross Highway 25 where the collision occurred at grade. The tracks run southwest and northeast and are basically level for several hundred feet in both directions. There is a slight rise in Highway 25 south of the tracks, but the highway north of the tracks is fairly level. The crossing was protected by the usual reflectorized cross buck warning sign near the crossing and by a highway warning sign several hundred feet north of the crossing. There were no trees, shrubs, bushes or buildings interfering with visibility. Plaintiff and Hegge had an unobstructed view of defendant's approaching train for a distance of several hundred feet as they approached the crossing from the north.

The law in this state is well settled that it is the continuing duty of a motorist who is familiar with or who knowingly approaches a railway crossing, Johnson v. Chicago & Northwestern Ry. Co., 71 S.D. 132, 22 N.W.2d 725, to exercise his senses for the purpose of determining whether or not he can cross the track in safety. Wooley v. Chicago & N. W. Ry. Co., 74 S.D. 203, 50 N.W.2d 644; Schuknecht v. Chicago, M., St. P. & P. R. Co., 74 S.D. 61, 48 N.W.2d 917; and Ulrikson v. Chicago, M., St. P. & P. Ry. Co., 64 S.D. 476, 268 N.W. 369. If it is an open crossing in a rural area and there is nothing obstructing the view of an approaching train, it is negligence more than slight, as a matter of law, for such a motorist not to look and see and consequently heed and avoid the approaching danger. Furthermore, the failure of the train engineer to give statutory warning signals does

not relieve the motorist of such duty. Schuknecht v. Chicago, M., St. P. & P. R. Co., 74 S.D. 61, 48 N.W.2d 917; and Plucker v. Chicago, M. & St. P. Ry. Co., 52 S.D. 554, 219 N.W. 254.

In considering the motion for summary judgment it must be assumed the defendant railroad was negligent as alleged. Nevertheless, the trial court correctly concluded the employee driver, Robert Hegge, was guilty of contributory negligence more than slight, as a matter of law, for failure: to have the panel truck under proper control; to maintain a proper lookout; to see and heed the railway crossing warning signs; and to see an approaching train at an open level rural crossing where it was clearly visible to anyone looking at a time when a collision could and should have been avoided. There is no genuine issue of material facts in this respect and a directed verdict would be obligatory during a trial on this issue according to the well settled law of South Dakota.

Plaintiff concedes Robert E. Hegge was his employee and was acting in the course and scope of his employment at the time of the collision. In rendering summary judgment for defendant the trial court correctly applied our rule that a master is barred from recovery against a negligent defendant by the negligence of his servant acting within the scope of his employment. Restatement of Torts 2d § 486.

In an effort to avoid the imputation of his servant's negligence plaintiff urges the adoption of the rule in Weber v. Stokely-Van Camp, Inc., 274 Minn. 482, 144 N.W.2d 540, in which the Minnesota court abandoned the "two way test" of determining whether or not a servant's negligence should be imputed to his master and held the negligence of an employee driving his employer's truck in the course of his employment was not imputed to the employer who was riding in the truck at the time of the accident. Rejection of the Minnesota rule in Weber v. Stokely-Van Camp, in effect, is decisive of plaintiff's cause of action.

I would affirm and avoid the futility of a trial.

ROBERTS, J., concurs.