**LeRoy and Ida QUATIER, Plaintiffs and Appellants,**

v.

**CENTURY 21, JACK WHITE REALTY, Defendant and Appellee.**

No. 15827.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1988.

Decided April 13, 1988.

Steven L. Jorgensen, Sioux Falls, for plaintiffs and appellants.

Lawrence L. Piersol and Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Sellers sued realtor for misrepresenting enforceability of promissory note received from defaulting home buyer. Summary judgment was granted against sellers and they appeal. We reverse and remand.

*Facts*

LeRoy and Ida Quatier (Quatiers) built a home in Sioux Falls in 1972. In April 1979, they listed this home for sale with Century 21, Jack White Realty (White), a real estate broker. In April 1980, Quatiers received a purchase offer from John McLelland (McLelland) for $175,000. The proposed terms of payment were $60,000 down with the balance on a contract for deed. Prior to closing, White informed Quatiers that McLelland would be unable "to come up" with the down payment. White informed the Quatiers that he could arrange an alternate form of financing: a second mortgage to the bank and a promissory note for $104,000 to Quatiers from McLelland. Quatiers claim that White assured them that this alternative form of financing was as good as a contract for deed and that the promissory note would be enforceable (i.e., that they would be able to obtain a judgment against the buyer for the face value of the note in the event of default).

McLelland borrowed $80,000 and gave Quatiers $70,000 as a down payment on the purchase of the home. After the closing Quatiers moved to Dickinson, North Dakota. McLelland later defaulted on his payments and, in February 1983, sued Quatiers for misrepresentation concerning water problems. Quatiers counterclaimed to collect on the promissory note. They were then told by an attorney that they could not recover on the note because it was unenforceable absent foreclosure. On August 2, 1983, Circuit Judge Kean granted partial summary judgment to McLelland and denied Quatiers a deficiency judgment because a foreclosure of the mortgage would constitute a full and final satisfaction of McLelland's liability to Quatiers. In

settlement of the lawsuit with McLelland, Quatiers were required to retake possession of the home and make the payments on the second mortgage.

Quatiers sued White in May of 1985 claiming damages in the sum of $104,000 and requesting punitive damages in the amount of $100,000. Quatiers claimed that White engaged in the unauthorized practice of law, failed to advise Quatiers that a promissory note executed in connection with the sale of their house was unenforceable except through foreclosure, had a conflict of interest[1] in representing both the Quatiers and the buyer in the sale of their house, and violated state law provisions concerning unprofessional conduct of a real estate broker.

After depositions were taken, White moved for summary judgment and it was granted. The trial court (Circuit Judge Hurd) held as a matter of law that the "misrepresentation lawsuit by McLelland against the ... [Quatiers] ... was the cause of the alleged default by McLellands on the purchase agreement and ... that the McLelland lawsuit was not caused or in any way contributed to by ... [White] in this action." Quatiers appeal this summary judgment.

### 1. WAS SUMMARY JUDGMENT PROPER?

In reviewing summary judgment, we view the evidence presented most favorably to the nonmoving party. The movant has the burden of proof to clearly show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Wilson v. Great Northern Railway*, 83 S.D. 207, 157 N.W.2d 19 (1968).

Quatiers claim that the court did not make the necessary finding that there were no genuine issues of material fact in granting summary judgment. They argue that the trial court improperly granted summary judgment for White based on an unrelated lawsuit that did not involve White. Quatiers contend that McLelland's allegations of misrepresentation were never in fact litigated and, therefore, there is no finding of fact of misrepresentation by Quatiers. They argue that negligent representations by White caused them to retake possession of their home encumbered by the second mortgage instead of collecting on the note; that they would not have allowed the second mortgage if they had known that, upon default, they could not recover on the note against McLelland. Therefore, they claim their damages—inability to collect on the note—are a direct result of White's negligent representations.

White claims that Quatiers' failure to disclose to McLelland that the house suffered from water problems led to McLelland's default and subsequent suit. He argues that it was the default which caused Quatiers' damages and that the default was a result of a legal dispute between Quatiers and McLelland. Although White argues this, he has not proven or established it in the record. White also denies that he made any statement to the Quatiers assuring them that the alternative financing arrangement was as good as a contract for deed. White stated "I didn't make any statements about that at all other than for the buyer to give clear title that the second mortgage would have to be paid off." He also claims that Ernie Carlson of Land Title Guaranty Company prepared the promissory note.[2]

In the McLelland–Quatier lawsuit, Judge Kean determined that the promissory note was not enforceable absent foreclosure. This determination is prima facie proof that Quatiers' claimed economic damage could have resulted from the unenforceability of

---

**1.** Quatiers claim White inappropriately represented both buyer and seller in the transaction. White's deposition admitted that there was no specific written consent to the dual representation but that Quatiers' signature on the addendum to the purchase agreement meant they acquiesced in the dual representation arrangement. He also stated that it is customary in about 50% of these transactions for the realtor to represent both parties.

**2.** The only bill from Carlson produced by White shows a bill for the preparation of the second mortgage and makes no mention of preparation of a promissory note. The amount charged for the preparation of the mortgage is the figure which appears on the closing statement.

the promissory note, because the note is unenforceable regardless of the cause of the default. The trial court incorrectly focused on the cause of McLelland's suit. The issue was and is what caused Quatiers' claimed economic losses.

Genuine issues of material fact exist as to the representations concerning the promissory note. A jury should determine whether these representations occurred and whether the cause of Quatiers' damage was the unenforceable promissory note, rather than the misrepresentation suit by McLelland. Reasonable minds can differ and jury questions are presented. *Groseth International, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558 (S.D.1986); *Wilson, supra.* Therefore, we reverse and remand for trial.

All the Justices concur.