FIRST FEDERAL SAVINGS BANK OF SOUTH DAKOTA, f/k/a First Federal Savings & Loan Association of Rapid City, Plaintiff and Appellee,

v.

Keith E. TROLINGER and Cheryl Trolinger; County of Pennington, a political subdivision of the State of South Dakota; and Larson's Mobile Home Village, Defendants and Appellants.

No. 16411.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1989.

Decided May 24, 1989.

Brian D. Hagg, George E. Grassby of Whiting, Hagg & Hagg, Rapid City, for plaintiff and appellee.

Gustave K. Johnson, Deputy State's Atty., Rapid City, for defendants and appellants.

MORGAN, Justice.

Pennington County (county) appeals from a summary judgment which decreed that its tax lien on a mobile home was inferior to the lien of First Federal Savings Bank. We reverse.

FACTS

Keith and Cheryl Trolinger purchased a mobile home in Rapid City, South Dakota, in May of 1981, with financing provided by First Federal. First Federal's lien was noted on the mobile home's certificate of title dated June 9, 1981. The mobile home was first listed with county's office of equalization in 1983.

Trolingers failed to make their payments under the installment sales contract and failed to pay their mobile home taxes in 1986, 1987, and 1988. First Federal brought this action to foreclose on its security interest, and county was named as a defendant because of its tax lien. First Federal and county filed cross motions for summary judgment, each seeking to establish priority for its lien. The trial court ruled that under SDCL 10–9–13, First Federal had a prior and superior lien on the mobile home and ordered county to issue repossession title to First Federal.

ISSUE I

Does First Federal's lien have priority over county's mobile home tax lien?

The parties agree that there is no genuine issue of material fact in this case; therefore, the question is whether First Federal is entitled to judgment as a matter of law. SDCL 15–6–56(c); *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). County argues that under SDCL 10–19–3, unpaid mobile home taxes are a first lien with priority over all other liens, even those which attached prior to the tax lien. SDCL 10–19–3 states: "All taxes assessed upon personal property within this state shall be a first lien on all personal property of the person against whom personal taxes are assessed, from and after January first in each year."

Contrary to county's claims, the trial court was correct in concluding that the "first lien" provision of SDCL 10–19–3 does not apply to mobile homes. SDCL 10–9–2 clearly states that mobile homes are to be taxed in the manner provided by SDCL ch. 10–9. Furthermore, SDCL 10–19–3 is outmoded because the South Dakota Legislature has repealed the personal property tax provisions. 1978 S.D.Sess.Laws ch. 72; SDCL 10–4–6.1.

However, the trial court erred in its interpretation of SDCL ch. 10–9. SDCL 10–9–13 provides for the application of statutory remedies for the collection of delinquent taxes:

This tax shall become a lien upon the mobile home assessed from and after the date of listing of the mobile home. *If the taxpayer fails to pay within the period prescribed in § 10–9–10, the statutory remedies for the collection of delinquent taxes shall be applicable.* Personal property taxes on property of the mobile homeowner, other than on the mobile home itself, shall only be treated as tax liens to the extent provided for in the provisions of chapter 10–19. (emphasis added).

These statutory remedies are found at SDCL ch. 10–22. SDCL 10–22–14 states that before seizing any property for delinquent taxes, the sheriff must determine whether there are any conditional sales contracts or other liens upon the property. Despite the existence of such liens, SDCL 10–22–15 allows encumbered property to be seized for the collection of taxes:

In making the seizure of property, the sheriff shall first seize such property as is not encumbered by any lien of record but *nothing herein contained shall prevent the sheriff from seizing any property for the tax based on that specific property, nor from seizing sufficient encumbered property to exact the proportion of the whole tax to be collected,* which the value of such encumbered property bears to all of the available property subject to the distress warrant, *nor shall anything herein contained prevent the sheriff from resorting to encumbered property for collection of all of said tax,* if the same is otherwise liable, and if the sheriff is unable after due diligence to collect the said tax as hereinbefore otherwise specified. (emphasis added).

In *Haakon County v. Brunswick Corporation*, 85 S.D. 410, 184 N.W.2d 768 (1971), we applied SDCL 10–22–14 and –15 to a set of facts very similar to those in the present case. There, Brunswick sold equipment to a bowling alley under a conditional sales contract dated February 20, 1963. Property taxes on the equipment went unpaid in the years 1966 through 1969. Brunswick repossessed the equipment on November 23, 1969, and two days later the county treasurer issued a distress warrant against the property to collect the delinquent taxes. This court held that the county had legal authority, under SDCL 10–22–15, to levy on the equipment repossessed by Brunswick, even though Brunswick had a prior lien. 85 S.D. at 413–414, 184 N.W.2d at 769–770.

■ Based upon SDCL 10–22–15 and our decision in *Haakon County v. Brunswick Corporation*, we conclude that liens do not take priority over taxes. Therefore, the trial court erred in ruling that First Federal's lien has priority over county's mobile home tax lien.

### ISSUE II

■ Must all taxes due on a mobile home be paid before repossession title can be obtained in a foreclosure action?

The trial court ordered county to issue repossession title to First Federal regardless of whether there were any surplus proceeds to pay county's tax lien. This ruling is erroneous in light of our holding in Issue I and clear statutory authority. SDCL 10–9–3.2 states:

Any transfer or reassignment of a mobile home title shall be accompanied by an affidavit issued by the county treasurer of the county in which the mobile home is registered, stating that the current year's taxes are paid. *No title will be transferred or license plate issued other than on a new mobile home registration until the taxes under § 10–9–3 are paid.* No transfer of title shall be completed unless the mobile home is registered as provided in § 10–9–3. (emphasis added).

Therefore, repossession title should not be transferred to First Federal until all delinquent taxes on the mobile home are paid.

Reversed and remanded.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Liens are creatures of statute. It is the State Legislature which has the power to fix the priority of liens. *See, generally,* 51 Am.Jur.2d *Liens,* § 57 (1970). I respectfully call to the reader's attention the South Dakota Codified Laws, General Index (1988 Rev.), at 662–5. Beginning with an agister's lien, and ending with welfare liens, there are literally dozens of varied liens created by the State Legislature.

Legislative prerogative to establish a prior lien for taxes must be accorded due respect by the judicial branch under the doctrine of separation of powers. Therefore, secured interests or chattel mortgages may fall by the wayside, in priority, if the State Legislature expresses such an intent. *See,* 69 Am.Jur.2d *Secured Transactions,* § 514 (1973).

Inherent in the definition of mobile homes is mobility. They are quickly moveable. They are subject to initial registration and titling under SDCL 32–3–3.1. Initially, at least, they fall under the definition of "motor vehicles" (SDCL 32–3–1); see, Opinion of Attorney General, Report 1963–64, p. 171. Often, they sit upon wheels. Sometimes, the wheels are taken off and they are affixed to a foundation.

Mobile homes can be moved out of a county or out of a state in a short span of time. Thus, the legislature appears to have mandated a policy to affix taxes on mobile homes which have a first lien priority. This statement is based upon SDCL 10–9–13, which refers to SDCL 10–9–10, plus those provisions of SDCL 10–22–14, –15.

Do taxes, such as the majority suggests, take priority over liens, in each factual scenario? The answer all depends upon the State Legislature's prerogative and intent, which it reduces into its creation called a statute. If the statute provides priority for a tax lien over another type of lien, or all liens, the statute becomes so obvious that it does not require construction. An additional judicial facet, perhaps a countervailing concept, is this: Statutes should be read in harmony. *State v. Woods,* 361 N.W.2d 620, 622 (S.D.1985), *Northwest Finance Co. v. Nord,* 70 S.D. 549, 19 N.W.2d 578, 580 (1945). Taxes should be elevated in priority when the State Legislature specifically says so.*

Precedent can be established by a word here, a word there. Often words in a legal

---

* For a general rule that a statutory tax lien is paramount to other liens on property only when a statute expressly provides so, see *Smith v. Addiego,* 54 Cal.App.2d 230, 237, 129 P.2d 953, 957 (1942); *see, also, In re Cummins,* 656 F.2d 1262, 1264 (9th Cir.1981); *Jefferson Standard Life Ins. Co. v. United States,* 247 F.2d 777, 778 (9th Cir.1957) (applying California law). This is a good, bright-line rule. Time precludes a thorough and resourceful examination of the dozens upon dozens of liens created and indexed in South Dakota. Their priority? Unquestionably, provocative questions shall surface in the future. Subtle or dynamic forces and facts, involving other liens and statutes, which are not addressed by this decision, might well surface in the future which now preclude my straight concurrence herein.

writing develop unpredictable authority; conversely, they often establish predictable authority. An analysis of a word or phrase can obscure the author's true meaning. I read, one time, that the important thing about any word is how you understand it. Opinions are like paintings. An author uses words like colors. Concepts in law may be likened to the background on the canvas. Soon, there is a blending of colors and objects, and a beautiful painting is created (hopefully). Ideas create opinions and are powerful, as when an artist strokes his brush. A single word or stroke may create discord or imprecision.

We should read these statutes, *supra,* in harmony. We should consider the public policy involved in this case. We should consider a very strong edict, established by SDCL 10–9–3.2, fashioned by our State Legislature. It becomes abundantly clear that our State Legislature placed a superior lien on mobile home taxes for it decreed, thereunder, that a title to a mobile home could not be transferred or a license plate issued unless the taxes were paid. Lastly, First Federal took a lien on this mobile home knowing that there were statutes on the books attaching great significance to the imposition and collection of taxes on mobile homes. These mobile homes, which have mushroomed as part of our culture, in every county of this state, owe a responsibility of support to the general maintenance of all government. It is not my intent to disparage those who live in mobile homes, but the Legislature can take into account the special tax problems presented by mobility. These taxes attach to the mobile home itself and those taxes collected must pay for the expenses of governmental entities. First Federal certainly has a just lien, but it is inferior to the aggregate tax lien of Pennington County for the sum of $1,133.93. Were it not so, mobile homes, through their inherent portability, could escape from paying a proportionate share of taxes so vitally necessary for the public support of the many demands upon government.