**AMERICAN INDIAN AGRICULTURAL CREDIT CONSORTIUM, INC.,**
Plaintiff and Appellee,

v.

**FORT PIERRE LIVESTOCK, INC.,**
Defendant and Appellant.

No. 14874.

Supreme Court of South Dakota.

Considered on Briefs Sept. 9, 1985.

Decided Dec. 31, 1985.

Michael Carter, of Maher, Carter & Bode, Pierre, for plaintiff and appellee.

Charles M. Thompson, of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant.

FOSHEIM, Chief Justice (on reassignment).

This is an appeal from a grant of summary judgment in a conversion action. We affirm.

On August 4, 1976, American Indian Agricultural Credit Consortium, Inc. (Ag Credit), loaned $19,000.00 to Kenneth H. West (West) of Eagle Butte, South Dakota. To secure the debt, West executed a note and security agreement granting Ag Credit a first lien upon cattle owned by West which were branded or to be branded "⋈W on right ribs, with an orange ear tag right ear." A financing statement containing the same language was filed with the Dewey County, South Dakota, Register of Deeds on August 13, 1976, and subsequently continued on August 17, 1981.

On October 8, 1981, Ag Credit mailed to numerous livestock markets, including Ft. Pierre Livestock, a form letter which stated, *inter alia*, "by virtue of a financing statement filed with the Register of Deeds in each respective county, [we] hold a FIRST mortgage on all livestock owned or claimed by individuals listed below." Specifically, the letter stated that Ag Credit held a first mortgage on all livestock owned or claimed by "West, Kenneth H., Box 956, Eagle Butte, S.D. 57625, Cattle Branded ⋈W right rib." During depositions taken pursuant to this litigation, Ft. Pierre Livestock acknowledged: receipt of the letter; that said letter was in their Rolodex file; and, that Ft. Pierre Livestock employees regularly and routinely referred to the file prior to issuing checks to individuals.

Prior to November 5, 1982, payments on the debt were made by West, totaling approximately $11,400.00. On that date, however, West consigned 123 head of cattle to Ft. Pierre Livestock for sale. These cattle were branded ⋈W but had no orange ear tags. Initially, Ft. Pierre Livestock issued a check made jointly to Kenneth H. West and Ag Credit because Ag Credit had notified Ft. Pierre Livestock of its security interest in West's cattle. When West was presented with the check, however, he refused to accept it, explaining that he was not Kenneth H. West, but Kenny West and that the check should be made out to him alone. Ft. Pierre Livestock relied on West's representations and reissued a check to West only in the amount of $41,-755.42. Subsequently, this conversion action was commenced by Ag Credit to recover from Ft. Pierre Livestock the balance due on West's note.

Ft. Pierre Livestock answered, denying the cattle sold were those covered under the security agreement. Motions for summary judgment were filed by both parties. In a letter dated January 2, 1985, the trial

court ruled on the motions and found as a matter of law that, although the cattle did not have the orange ear tags referred to in the security agreement and financing statement, once a proper filing was made and once actual notice was received by Ft. Pierre Livestock, the sale barn had a duty to issue the check jointly to West and Ag Credit.

On appeal, Ft. Pierre Livestock contends that the cattle sold were not those secured under the security agreement. They do not dispute that West owned the cattle sold, but do argue that Ag Credit did not have a security interest in those "particular" cattle sufficient to maintain a conversion action. The trial court's letter granting summary judgment states:

> The only fact that may remain in some dispute is whether the cattle had orange ear tags or not when they went through the sale ring. The defendant, Ft. Pierre Livestock, Inc., maintains they had the brand on them indicated in the security agreement, but that they did not have the ear tag when they went through. Plaintiff has no knowledge of whether they had the orange ear tags or not, nor at this time do they have any witnesses that could testify that they did. The defendant claims that his witnesses could establish at trial they did not have the orange ear tags on. For the purposes of this summary judgment, this Court is assuming as a fact that they did not have the orange ear tag on them. Having made this assumption, the Court gives summary judgment to the plaintiff for the amount left due and owing on the note plus interest thereon.

Under SDCL 15–6–56(c), summary judgment is properly awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Since a summary judgment presupposes there is no genuine issue of fact, findings of fact and conclusions of law are unnecessary." *Wilson v. Great*

*Northern Railway Company,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). When addressing a motion for summary judgment, however, it is to be remembered that: (1) the evidence presented must be viewed most favorably to the nonmoving party; (2) the movant has the burden of proof to clearly show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) summary judgment was never intended to be used as a substitute for a court trial where any genuine issue of material fact exists; (4) a belief that the nonmoving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be sham, frivolous, or so unsubstantial as to obviate the futility of their litigation; and, (5) summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue should be resolved against the movant. *Id.*

We believe that summary judgment was proper inasmuch as there were no genuine issues of material fact, namely, whether the cattle in question were secured by the security agreement and financing statement. In support of its ruling on Ag Credit's motion for summary judgment, the court stated:

> The reason for the summary judgment is that the Court concludes as a matter of law that once a proper filing was made, and once the actual notice was had by the defendant, the Fort Pierre Livestock, Inc., it had a duty to issue the check jointly as requested by the plaintiff. South Dakota law provides under such circumstances that the livestock company is liable for failure to recognize such a security agreement.

While the security agreement and financing statement included a "with an orange ear tag right ear" clause in the description of the cattle covered, that was nothing more than additional or surplus identification. Here, Ft. Pierre Livestock was given actual notice only of the brand identification of the secured cattle. The orange ear

tags were not material to and, therefore, could not control, the identification process. They could not be relied on as a dependable means of identification since, unlike a brand, ear tags are easily removed. The trial court properly determined that, as a matter of law, that Ag Credit had a perfected security interest in the cattle and that there was no material issue of fact[1] concerning whether Ft. Pierre Livestock had received actual notice of the security interest. Therefore, the summary judgment of conversion was properly entered.

The summary judgment is affirmed.

MORGAN, J., and HERTZ, Acting J., concur.

HENDERSON, J., concurs with a writing.

WUEST, Acting J., dissents.

HENDERSON, Justice (concurring).

I concur fully with the majority opinion herein. The ear tags are not controlling—they are transitory. Brands, burned into the hide, do not go away. Ear tags can fall off; a brand does not fall off.

I write to particularly distinguish the present case from that addressed in *Aberdeen PCA v. Redfield Livestock*, 379 N.W. 2d 829 (S.D.1985). In the present case, the livestock sales pavilion had actual notice that West's cattle were covered by a security agreement. Ft. Pierre Livestock admitted receiving a letter referring to a financing statement and then placing the letter on its Rolodex for the express purpose of informing employees to be cautious before issuing checks to individuals. This particular letter specifically expressed that Ag Credit checks to individuals. This particular letter specifically expressed that Ag Credit held a first mortgage on certain livestock claimed by certain individuals: "West, Kenneth H., Box 956, Eagle Butte, S.D. 57625, Cattle Branded ⋈W right rib." This actual notice to Ft. Pierre Livestock, warning them, in effect, of the first mortgage interest was the crucial fact constituting actual

notice upon which the trial court relied when rendering its decision. Unlike the situation addressed in *Redfield Livestock*, however, nothing in this case indicates that the secured party, Ag Credit, waived its security interest by express authorization or prior course of dealing. Hence, there is no parallel in the cases so far as conversion liability is concerned. Unfortunately, a sales barn employee permitted a fast talker to renegotiate a check to him individually which was jointly and properly issued in the first instance. With the proper filing and the actual notice, Ft. Pierre Livestock owed a duty to issue the check jointly as requested by Ag Credit. The trial court properly decided this case under summary judgment.

WUEST, Acting Justice (dissenting).

I dissent. In its answer, Appellant denied the cattle sold were those covered under the security agreement. None of the affidavits, interrogatories, depositions, or pleadings, resolved this fact issue. On appeal, Ft. Pierre Livestock stoutly maintains the cattle sold were not those secured under the security agreement. Its brief states it thus:

> It is not disputed that Mr. West owned the cattle sold, however, it is disputed that Ag Credit had a security interest in those 'particular' cattle so as to be able to maintain a conversion action.

In my opinion, it is possible, as Appellant claims, that the cattle sold were a different herd than those cattle covered by the security agreement. That is a factual question which should not be ascertained by a motion for summary judgment. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968).

If, upon trial, it is determined the particular cattle sold were those covered by the security agreement, then in my opinion the Plaintiff/Appellee may recover because Appellant had actual notice.

---

1. The question of notice is one of fact. *Betts v. Letcher,* 1 S.D. 182, 46 N.W. 193 (1890).