**SOUTH DAKOTA BOARD OF REGENTS, Plaintiff,**

v.

**H. Ray HOOPS, Defendant.**

**Civ. No. 85–3042.**

United States District Court, D. South Dakota, C.D.

Jan. 14, 1986.

Ronald W. Banks, Banks & Johnson, Rapid City, S.D., for plaintiff.

Michael J. Hickey, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Plaintiff, South Dakota Board of Regents, commenced a declaratory judgment action in state court seeking resolution of a controversy over an employment contract with defendant, H. Ray Hoops, former President of South Dakota State University. Pursuant to 28 U.S.C. §§ 1332 and 1441, defendant removed this action to the Central Division of the District of South Dakota. He has counterclaimed for loss of earnings, damage to reputation and emotional anxiety resulting from plaintiff's alleged violations of his property and contract rights under the United States Constitution and civil rights under 42 U.S.C. § 1983. Plaintiff has moved for remand of this action back to state court based on lack of diversity jurisdiction and a claim of immunity under the eleventh amendment.

### I.

A district court is required to examine petitions for removal and to remand to state court any case removed improvidently and without jurisdiction. 28 U.S.C. § 1447(c). In evaluating removal jurisdiction, a federal court must have original

jurisdiction in the first instance. *Sarnelli v. Tickle*, 556 F.Supp. 557, 559 (E.D.N.Y. 1983). It is a well settled rule that in the absence of a specific statutory exception, a federal court may only exercise removal jurisdiction over a case if it would have had jurisdiction over the case as originally filed by the plaintiff. *Betar v. DeHavilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 36 (7th Cir.1979), *cert. denied*, 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980). Thus, any counterclaims raised by defendant will not be considered in examining whether removal was proper.

■ In its complaint, the South Dakota Board of Regents seeks a declaration of rights under a memorandum agreement made with defendant. No federal question appears on the face of the complaint. Removal will not be granted on the probability that a federal question will arise in subsequent proceedings. *See Northwest Central Pipeline Corp. v. Mesa Petroleum Co.*, 576 F.Supp. 1495, 1498–99 (D.Del. 1983). Therefore, this court may retain jurisdiction only if there is diversity of citizenship between the parties.

■ Defendant alleges that he is a "citizen" of North Dakota and plaintiff is a "citizen" of South Dakota. Since the South Dakota Board of Regents is a state agency, it becomes important to determine whether the State or the Board is the real party in interest. A state is not considered a "citizen" for purposes of diversity jurisdiction under 28 U.S.C. § 1332. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973); *State Highway Comm'n. v. Kansas City Bridge Co.*, 81 F.2d 689, 691 (8th Cir.), *cert. denied*, 298 U.S. 661, 56 S.Ct. 682, 80 L.Ed. 1386 (1936). If an agency performing a government function is independent from the state, separate and distinct, a district court has jurisdiction to proceed on the merits.

■ In determining whether a state agency is an "alter ego" of the state, the entity and its characteristics must be exam-ined to determine whether the state is the real party in interest.* In *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir.1983), the Fifth Circuit has suggested the following factors be considered in evaluating the independence of an agency:

1) The right of the agency to hold and use property;

2) The authority to sue and be sued in its corporate name;

3) The extent of independent management authority;

4) The treatment of the agency by the state's courts;

5) Whether the state is responsible for the agency's debt;

6) The agency's concern with statewide, as opposed to local problems; and

7) The degree of financial autonomy of the agency.

In the present case, the Board is a corporate body appointed by the Governor and confirmed by the Senate, and responsible for the control of state supported educational institutions. S.D. Const. art. XIV, § 3. It is authorized to employ and dismiss officers and employees of such institutions, and is given the power to sue and be sued and to hold and manage any property belonging to educational institutions under its control. SDCL §§ 13–49–14, 13–49–11 (1982). The Board is authorized to bring suit in "any proper court in its own name to enforce any contract made by it" and "[a]ny money collected on any judgment ... shall be paid into the treasury for the benefit of the educational institutions...." SDCL § 13–49–18 (1982).

The defendant contends the Board is not an alter ego of the state since it is a corporate body with the power to sue and be sued, to contract, and to hold, use and control the property which has been entrusted to it by statute. While the Board is clearly granted several powers of an independent agency, there are other factors which balance against reaching the conclusion that the Board is a citizen for purposes

---

* See Appendix for listing of South Dakota statutes cited in this opinion.

of diversity jurisdiction. First, since members of the Board of Regents are appointed by the Governor and confirmed by the Senate, the State retains a significant measure of control. The Board "is not a fourth branch of government independent of legislative policies." *South Dakota Bd. of Regents v. Meierhenry*, 351 N.W.2d 450, 451 (S.D.1984). *See South Dakota Board of Regents v. Meister*, 309 N.W.2d 121, 123 (S.D.1981) (authority of Board stems from the executive branch of government). Secondly, the Board is charged with the control of all state-supported educational institutions, and is thus absorbed in traditional state public welfare concerns and not acting in a private or proprietary capacity. *See Morrison-Knudsen Co. v. Massachusetts Bay Transp. Authority*, 573 F.Supp. 698, 703–04 (D.Idaho 1983). Although the Board is granted power to supervise and manage state institutional property, it is unclear whether the state has transferred ownership rights to the Board.[1] Lastly, there is nothing to suggest any financial autonomy on the part of the Board of Regents. "[A] crucial question in determining whether the suit should be regarded as one against the state is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.1981). In the present case, any declaration of rights under the employment agreement between plaintiff and defendant might impact the state treasury by requiring the payment of funds. SDCL § 21–32–16 (1985

Supp.)[2] provides for the waiver of immunity to the extent of insurance coverage. Even assuming, however, a policy was obtained and the proceeds were available to cover liabilities of this sort, there is no indication that the insurance would fully cover such liabilities and secure financial independence of the Board from the State. While SDCL § 13–49–18 (1982) suggests that any judgments obtained shall be paid to the treasury, no special funds appear to be reserved for the payment of liabilities resulting from such suits. The South Dakota Supreme Court has held that the Board of Regents' control "does not include the power of the purse." *Kanaly v. State*, 368 N.W.2d 819, 825 (S.D.1985). The Board's lack of financial autonomy is demonstrated by the requirement that all moneys arising from any educational institution under its control be received by the state treasurer. SDCL § 13–53–15 (1985 Supp.). Further, the Board's authorization to make expenditures for building and maintaining educational institutions from the Educational Facilities Fund in the state treasury[3] also serves to suggest its lack of self-support.

█ In *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir.1982), the Fifth Circuit found "most telling" in determining whether a hospital district would be considered independent of the state a Texas Constitution provision stating that a hospital district "shall never become a charge against the State of Texas." In the present case, however, there is

---

1. SDCL § 13–49–11 (1982) confers upon the Board the power to "hold and manage" property belonging to educational institutions. SDCL § 13–49–15 (1982) grants the Board the power *to purchase and contract for institutions.* SDCL § 13–51A–2 (1982) provides in part that the Board of Regents "shall have the power for each institution to: (1) Acquire any project or projects, or any combination thereof, and to own, operate and maintain the same." This statute falls within Chapter 13–51A, entitled "Board of Regents Revenue Bonds". In this context it is unclear whether the legislature intended to vest title to educational property in the Board or merely to grant bonding authority. Prior to adoption of the statute, the South Dakota Supreme Court held that "[t]itle to state-

owned educational property in this state is in the state, and not in the board of regents." *Mullen v. Dwight*, 42 S.D. 171, 173 N.W. 645, 646 (1919).

2. 21–32–16. Waiver of immunity to extent of insurance coverage—Consent to suit. To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be *deemed to have waived the common law doctrine of sovereign immunity* and consented to suit in the same manner that any other party may be sued.

3. SDCL § 13–51–2 (1985 Supp.).

no comparable disclaimer of liability by the state. The South Dakota Board of Regents is given the authority to issue bonds for the purpose of developing facilities at state institutions, SDCL § 13–51A–4 (1982). The statutes provide that the bonds are prohibited from becoming an obligation of the state of South Dakota, SDCL § 13–51A–23 and § 13–51A–24 (1982). Although this disclaimer serves to shield the state from liability on bonds issued by the Board, there is no indication it was intended to secure the state's financial independence from the Board's general debts and obligations.

## II.

Independent of a finding of lack of diversity jurisdiction, this court would find preclusion of the present action in the federal court by the eleventh amendment.[4] Under the eleventh amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973).[5]

As in analysis of diversity jurisdiction, the central inquiry under the eleventh amendment is whether the state agency is an alter ego of the state or is functionally independent of the state. *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d at 1132; *Ronwin v. Shapiro*, 657 F.2d at 1073. The Board's responsibility over the essential non-private realm of public education as well as the Board's lack of financial and structural independence from the state dictates a finding that the state is the substantial party in interest. There is no indication that a damage award could be paid through the Board's revenue bonds which are earmarked for the improvement of state institutions. *See United Carolina Bank v. Board of Regents*, 665 F.2d 553, 559–60 (5th Cir.1982).

Defendant would argue, nevertheless, that even if the Board of Regents is part of the state, South Dakota has waived its eleventh amendment immunity by virtue of SDCL § 13–49–11 (1982). That statute confers upon the Board of Regents the "power to sue and be sued." The Supreme Court has indicated, however, that language conferring upon a public instrumentality the power to "sue and be sued" does not ordinarily operate to waive the defense of the eleventh amendment as such a waiver "in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal, courts." *Petty v. Tennessee-Missouri Bridge Comm'n.*, 395 U.S. 275, 276–77, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (emphasis in original). Accordingly, the Court indicated it will find an eleventh amendment waiver "only where stated 'by the most express language or by such overwhelming implica-

---

**4.** "Eleventh amendment immunity is a question of subject-matter jurisdiction." *Walker v. Transport of New Jersey*, 534 F.Supp. 719, 721 (E.D.Pa.1982). The eleventh amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**5.** Defendant erroneously suggests that eleventh amendment immunity is not a bar to suits such as the present action which seeks prospective and declaratory relief. However, when a suit is truly against the state as the real party in interest, the eleventh amendment bar "applies regardless of the nature of the relief sought." *Pennhurst State Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Barger v. State of Kansas*, 620 F.Supp. 1432, 1434 (D.Kan.1985). Prospective injunctive awards are proper under the eleventh amendment in redressing constitutional deprivations by State officials acting outside the scope of their official authority. *Id.* 465 U.S. at 102, 104–05, 104 S.Ct. at 909, 910. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).

tions from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1361 (citing *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

■ An examination of state decisional law fails to suggest any intent of the state to confer consent to suit in federal court. On the contrary, the South Dakota Supreme Court has indicated that the doctrine of sovereign immunity provides for the state's immunity from suit in state court "unless the legislature has consented to the particular suit alleged." *Kruger v. Wilson,* 325 N.W.2d 851, 852 (S.D.1982). In construing the significance of SDCL § 13–49–11, which grants the Board the power to "sue and be sued", the South Dakota Supreme Court declared that this clause "does not, in the absence of statutory authority expressly waiving sovereign immunity create a cause of action in tort against the Board." *Kringen v. Shea,* 333 N.W.2d 445, 446 (S.D.1983). Although SDCL § 21–32–16 (1985 Supp.) confers a waiver of "the common law doctrine of sovereign immunity" to the extent of insurance coverage, this court declines to infer such a waiver in federal court since the concepts of sovereign immunity and the eleventh amendment are not synonomous. "[A] State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts." *Pennhurst,* 465 U.S. at 99 n. 9, 104 S.Ct. at 907 n. 9. Since there is no clear expression of consent as required to support a finding of waiver of eleventh amendment immunity, no such waiver will be implied.[6]

6. In *American Re-Insurance Co. v. Janklow,* 676 F.2d 1177, 1183 n. 15 (8th Cir.1982), the Eighth Circuit determined that SDCL 21–32–15 and § 21–32–16 did not constitute "express language" of waiver of eleventh amendment immunity sufficient to infer South Dakota's consent to suit in federal court.

7. The Eighth Circuit has held that the Board of Regents may not be sued under 42 U.S.C. § 1983 because it is not a "person" within the meaning of the statute. *Prostrollo v. University of South Dakota,* 507 F.2d 775, 777 n. 1 (8th Cir.1974),

## III.

■ The defendant contends, nevertheless, that the Board has waived any eleventh amendment immunity it might otherwise enjoy by instituting the present declaratory judgment action in state court against a nonresident defendant. Because FRCP 13(a) and SDCL § 15–6–13(a) (1984) necessitate the raising of any claims arising out of the same transaction or occurrence as the claim of the opposing party, defendant alleges the Board has consented to all counterclaims. Even if this Court would otherwise have jurisdiction over defendant's federal claims,[7] the authorizing statute of the Federal Rules of Civil Procedure specifies the rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982). This Court declines to find that a rule promulgated pursuant to this statute was intended to abridge the Board's constitutional right to immunity. See *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1053 (9th Cir.1985).

Accordingly, this court finds that the South Dakota Board of Regents is a dependent arm of the state and is therefore immune to suit under the eleventh amendment and not a "citizen" for purposes of establishing diversity jurisdiction. Both a lack of jurisdiction as well as a lack of federal concerns on the face of the complaint indicate that this action was improvidently removed from the South Dakota courts. Any federal rights raised by defendant by way of counterclaim may be vindicated in the state courts which have been recognized as co-equal guardians of

*cert. denied,* 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1975). This finding is consistent with *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that municipal bodies and other governmental units are not entitled to absolute immunity from suit under § 1983. The Court limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell,* 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54.

constitutional rights. Plaintiff's motion to remand is therefore granted and this case is dismissed for lack of subject matter jurisdiction.

APPENDIX OF SOUTH DAKOTA STATUTES

| STATUTE | | PAGE |
|---|---|---|
| SDCL § 13–49–11 | (1982) (Corporate Powers of Board) | 1181, 1182 n. 1, 1183, 1184 |
| SDCL § 13–49–14 | (1982) (Employment at Institutions) | 1181 |
| SDCL § 13–49–15 | (1982) (Purchasing and Contracting Powers) | 1182 n. 1 |
| SDCL § 13–49–18 | (1982) (Prosecution of Actions) | 1181, 1182 |
| SDCL § 13–51–2 | (1985 Supp.) (Educational Facilities Fund) | 1182 n. 3 |
| SDCL § 13–51A–2 | (1982) (Power to Acquire Property) | 1182 n. 1 |
| SDCL § 13–51A–4 | (1982) (Borrowing Power) | 1183 |
| SDCL § 13–51A–23 | (1982) (Prohibiting Obligation of State) | 1183 |
| SDCL § 13–51A–24 | (1982) (Limited Obligation of Bonds) | 1183 |
| SDCL § 13–53–15 | (1985 Supp.) (Receipt of Institutional Moneys) | 1182 |
| SDCL § 15–6–13(a) | (1984) (Compulsory Counterclaims) | 1184 |
| SDCL § 21–32–15 | (1985 Supp.) (Liability Insurance) | 1184 n. 6 |
| SDCL § 21–32–16 | (1985 Supp.) (Waiver of Sovereign Immunity) | 1182, 1184, 1184 n. 6 |