**Clifford Scott AASE, et al., Plaintiffs and Appellants,**

v.

**STATE of South Dakota, SOUTH DA-KOTA BOARD OF REGENTS et al., Defendants and Appellees.**

**No. 15246.**

Supreme Court of South Dakota.

Argued Sept. 15, 1986.

Decided Jan. 28, 1987.

Rehearing Denied March 9, 1987.

Celia Miner of Brady, Kabeiseman, Reade & Johnson, Yankton, and David J. Figuli of Wickens, Herzer & Panza, P.C., Greeley, Co., for plaintiffs and appellants.

Terry N. Prendergast of Boyce, Murphy, McDowell & Greenfield, Sioux Falls,

Wayne F. Gilbert and Ronald W. Banks of Banks & Johnson, P.C., Rapid City, and John Meyer of South Dakota Board of Regents, Pierre, for defendants and appellees.

HEEGE, Circuit Judge.

This is one of a series of actions brought to test the legality of closing the University of South Dakota at Springfield (USD/S) and the effect of such closing on various individuals.[1] The plaintiffs in this action are students who attended USD/S during the academic year 1983–84. The defendants include the members of the South Dakota Board of Regents, individually and in their capacity as regents. The trial court granted these defendants' motion for summary judgment and the plaintiffs appealed. We affirm.

In the spring of 1984 the South Dakota Legislature enacted Senate Bill 221, which was signed into law as an emergency measure on March 9, 1984. 1984 S.D.Sess. Laws ch. 138. In pertinent part, the bill transferred control of the USD/S grounds and facilities from the Board of Regents to the Board of Charities and Corrections, effective May 1, 1984, and converted the school to a minimum security prison. The bill also permitted the students to finish out the 1983–84 academic year at the Springfield campus and required that the Board of Regents and the Board of Vocational Education take steps to give the students an opportunity to complete their courses of study in South Dakota through articulation agreements and by including a baccalaureate program of vocational education within one of the institutions under their control.

The students filed suit, alleging five counts in the amended complaint: (1) a claim for breach of contract;[2] (2) a claim for injunctive relief to prevent closure of USD/S and a declaration that SB 221 is unconstitutional; (3) a claim for violation of civil rights under 42 U.S.C. § 1983 (1982); (4) a claim for invasion of individual constitutional rights; and (5) claims made under the South Dakota Deceptive Trade Practices and Consumer Protection Act. SDCL ch. 37–24.

■ We conclude, as did the trial court, that based on the record and as a matter of law the students had no enforceable contract rights against the Regents. As a general principle, the relationship between a university and a student is contractual by nature. *Corso v. Creighton University*, 731 F.2d 529 (8th Cir.1984); 14 C.J.S. *Colleges and Universities* § 24. However, the only contract formed between the student and the school which he is attending is for the term for which the tuition is paid. *See Abbariao v. Hamline University School of Law*, 258 N.W.2d 108 (Minn.1977). In the instant case the students were permitted to complete the academic year at the Springfield campus, so no rights of the students were impaired. Plaintiffs did not develop any other contract rights with the Board of Regents.

Plaintiffs claim the trial court erred in holding that SB 221 made impossible the performance of any contract with the Regents; they argue that the Regents could have performed their "contractual obligations" either at Springfield or at other institutions. We need not and do not reach this issue in view of our holding that no contract rights existed after the 1983–84 academic year.

The trial court was not required to determine, and we do not reach, the question of

1. Other cases involving the constitutionality of S.B. 221 or the closing of the Springfield Campus include: *Kanaly v. State,* 368 N.W.2d 819 (S.D.1985); *Merkwan v. State,* 375 N.W.2d 624 (S.D.1985); *Bonine et al. v. Board of Regents, et al.,* No. 85–3022, presently pending in U.S. District Court, District of South Dakota, Central Division; *Bonine, et al. v. John Meyer,* No. 86–4067, presently pending in U.S. District Court, District of South Dakota, Central Division.

2. Paragraph V of the first cause of action states:
   Defendants have breached their contractual relationship and their contracts with Plaintiffs in that now Plaintiffs, through no fault of their own, are unable to complete their educational programs at the University of South Dakota/Springfield.

what rights the plaintiffs may have against the Board of Regents under the mandate from the legislature to "assure ... the opportunity to complete their course of study in South Dakota...." We are compelled to reach this result because the plaintiffs made no claim against the Regents on that theory in their amended complaint. Moreover, it stands undisputed in the record that the Board of Regents gave the students the opportunity to complete their courses of study in South Dakota as required by SB 221.

With regard to the question of injunctive relief, it is clear that the students are not entitled to a mandatory injunction against closure of the Springfield campus. The constitutionality of SB 221 was previously established in *Kanaly, supra,* note 1.

The trial court concluded, and we agree, that the Board of Regents is not a person within the meaning of 42 U.S.C. § 1983 (1982) and may not be sued under that section. *Prostrollo v. University of South Dakota,* 507 F.2d 775 (8th Cir.1974), *cert. denied* 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1975); *South Dakota Bd. of Regents v. Hoops,* 624 F.Supp. 1179 (D.S.D. 1986). Further, the trial court correctly held that the Regents in their individual capacities enjoy a qualified or good faith immunity which applies to the claims made in this action. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Finally, the trial court concluded, and we agree, that no constitutional rights of the students were invaded and no violation of SDCL ch. 37–24 was shown. Therefore, the trial court was correct in entering summary judgment within the strict standards set forth in *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). The evidence viewed most favorably to the plaintiffs establishes that the Board of Regents, individually and in their official capacities, are entitled as a matter of law to judgment dismissing plaintiffs' amended complaint.

The judgment of the trial court is affirmed.

MORGAN, J., and FOSHEIM, Retired Justice, concur.

HENDERSON and SABERS, JJ., dissent.

HEEGE, Circuit Judge, for WUEST, C.J., disqualified.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (dissenting).

Movant/State of South Dakota was not entitled to judgment as a matter of law. SDCL 15–6–56(c).

A court must give the non-moving party the benefit of any doubt as to the propriety of granting summary judgment. *Hurney v. Locke,* 308 N.W.2d 764 (S.D.1981).

Be it a pleading, affidavit, or deposition, a court must give every reasonable inference which arises from said pleading, affidavit, or deposition, viewed most favorably, toward the non-moving party—in this instance, the students. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968).

This Court is not bound by any decision of the circuit court as regards its determination of fact or of the law. As an appellate court, we should conduct an independent review of the record. Furthermore, until such time as the facts have been developed so that they are reasonably certain, it is wrong for a court to make a determination of law, for such a determination of law is based upon uncertainty of the facts in the case. *N.L.R.B. v. Smith Indus., Inc.,* 403 F.2d 889 (5th Cir.1968). Where there are complicated issues of fact to be resolved, so as to address difficult questions of law, it is necessary to "simply

recognize that there are instances where summary judgment is too blunt a weapon with which to win the day...." *Miller v. Gen. Outdoor Advertising Co.*, 337 F.2d 944, 948 (2d Cir.1964). A judge cannot summarily try the facts. He should limit his role to applying the law to the facts which have been established by the showing before him. When there is conflicting evidence which causes conflicting interpretation, or where reasonable men might differ as to its significance, summary judgment is not a proper remedy. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2725, at 106–09 (1983).[1]

In this case, the trial court struck five separate causes of action of the plaintiff. Defendants raised an impossibility of performance defense. The trial court determined that under the terms of Senate Bill 221, *as a matter of law*, the contracts with the students could not be performed by the Board.

Senate Bill 221 contains certain basic factual statements. Different conclusions and inferences may be drawn from said basic factual statements.

Students should have been permitted to phase out their educational programs. The majority of the programs offered at USD/S were not offered at other post-secondary institutions or institutions of higher education in South Dakota. Senate Bill 221 affected approximately 800 students enrolled in various educational programs. The educational rug was cut from under their feet. Now their legal rights are cut from under their feet. It is a tragedy of great dimension and unparalleled in South Dakota educational history. Prisoners in the State Penitentiary are now phased into students' classrooms and dormitories. USD/S was an outstanding junior college and technical/vocational school. To this end, degrees were awarded such as Associate of Arts, Associate of Science, Bachelor of Science and Technology, and Bachelor of Science and Education.

The plaintiffs and aforesaid students were enrolled in these programs and had invested their time and money in consuming college courses, admissions counselors, reading admission brochures for pre-enrollment use, and generally relying upon the representations of that institution's staff and faculty members regarding their educational programs. By Section 4 of Senate Bill 221, the Board of Regents and the Board of Vocational Education were directed to "take all necessary steps to insure that all students presently enrolled at the University of South Dakota at Springfield shall have the opportunity to complete their course of study in South Dakota at other public, post-secondary educational schools, public higher education institutions or a combination thereof through an articulation of agreements." Furthermore, said Bill further mandated that "The Board of Regents shall include a baccalaureate program of vocational education within at least one of the institutions under its control." By Section 4 of this Act, the plaintiffs/students enrolled in various programs and courses of study were entitled to complete their course of instruction and the Legislature appropriated money to support the directive contained in said Senate Bill 221.

On June 30, 1984, a day in educational infamy, all educational programs were terminated at USD/S. There were hundreds of depositions taken of students and these reflect the composite/deep problems pressed upon these students: Many were forced to relocate out of South Dakota; some were transferred to other institutions and were forced to modify their academic

---

**1.** Plainly, in this case, the burden of showing an absence of any genuine issue of material fact rests upon the State and if facts were in dispute, summary judgment should have been denied. *See* 10A Wright, Miller & Kane, at 106–09. *See also Wilson,* 83 S.D. at 212, 157 N.W.2d at 21. Moreover, examination of depositions of Joseph McFadden, President of the University of South Dakota, David Lorenz, Associate Director of Admissions at the University of South Dakota, Michelle Tapken, President of the Board of Regents at the time of USD/S closure, indicated existence of genuine issues of material fact, specifically pertaining to the planning of transition programs and the availability of funds with which student programs may have been supported.

programs which necessitated additional semesters of study; many students were unable to find an equivalent program and had to change their major; some were forced to discontinue their college education—altogether.

Traumatic, indeed, was Senate Bill 221 and now plaintiffs/students are told, before they ever have a chance to actually have their case heard in a court of law, that they have no case. In the depositions, most students testified that they were *never* provided an opportunity to continue the educational programs which they had begun at USD/S in the State of South Dakota.

It appears that hundreds of depositions were not considered by this trial court, for they were never transcribed in time for the trial court to consider them. Summary judgment should not have been granted in this case until *all* facts were sufficiently developed to enable the trial court to be reasonably certain that it was correct in its determination of the law. *N.L.R.B.*, 403 F.2d 889.

Summary judgment should not be granted before discovery is completed. It was not completed here. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir.1980). In this case, the State of South Dakota relies upon an affidavit of one Mr. Marshall wherein a question of fact on an ultimate issue supposedly brings forth the impossibility of performance by the Regents due to a lack of funding. Plaintiffs/students have argued, before us, that additional discovery will reveal that there were funds available to fund their educational pursuits. South Dakota tries to stonewall this by strenuously objecting to this Court taking judicial notice of the availability of funds to support plaintiffs' educational programs at Springfield. If the State of South Dakota is saying "we have no money and it was impossible for us to perform," and then reverted $5.8 million in unused monies to the general funds for the fiscal year 1984, one of the State's basic arguments is nullified. *See* J. Calamari & J. Perillo, *The Law of Contracts*, § 13–1 (2d ed. 1977); J. Murray, *Murray on Contracts*, §§ 197, 198 (2d ed. 1974); L. Simpson, *Handbook on the Law of Contracts*, §§ 174, 180 (2d ed. 1965) (all stating the general rule that performance is mandated and is only excused upon occurrence of extraordinary events which are not capable of control by the party asserting impossibility as an excuse for nonperformance). For the State of South Dakota to argue that Senate Bill 221 rendered the defendants unable to perform their contractual obligations, appears to be a most tenuous argument and most certainly a genuine issue of material fact.[2] There is no language in Senate Bill 221 which directs the Board of Regents to terminate the educational programs in which the USD/S students were enrolled. The absolute converse is true. In point of fact, the

2. *See* note 1, and accompanying text, *supra.* Also, the State appears to have camouflaged evidence which points to the possibility that funds were, in fact, available to facilitate transitional education programs which were called for in Senate Bill 221. If funds were available, the State would obviously be privy to such knowledge and the burden of proving the existence of said funds should not be upon plaintiffs/students. Rather, the State had a duty to show that no money existed, as it has been established, as a general rule of evidence, that when evidence as to an issue is peculiarly within the knowledge, grasp, or control of a party, the burden of producing that evidence rests upon him. *See Campbell v. United States*, 365 U.S. 85, 96, 81 S.Ct. 421, 427, 5 L.Ed.2d 428, 437 (1961); *United States v. New York, N.H., & H. R.R.*, 355 U.S. 253, 256, 78 S.Ct. 212, 214, 2 L.Ed.2d 247, 250 n. 5 (1957); *Selma, R. & D. R.R. v. United States*, 139 U.S. 560, 567–68, 11 S.Ct. 638, 640, 35 L.Ed. 266, 269 (1891); *Greenleaf's Lessee v. Birth*, 31 U.S. (6 Pet.) 302, 312, 8 L.Ed. 406, 410 (1832). This general rule also applies to motions for summary judgment. *See* 10A Wright, Miller & Kane, § 2727, at 143. Indeed, there is no universal test to look to when applying the burden of proof "[n]or ought there to be; for the allotment of the risk (or burden) is largely a matter of experience, depending on *fairness* to the respective parties in the various kinds of issues." J. Wigmore, *A Student's Textbook of the Law of Evidence*, § 446, at 444 (1935) (emphasis added). Again, in summary judgment situations, "[t]he burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law...." *Wilson*, 83 S.D. at 212, 157 N.W.2d at 21.

Board of Regents was absolutely directed to carry on these students' educational endeavors to insure that the students would complete their course of instruction as I have pointed out above. In Section 7 of the Act, a transfer of funds was established to support that directive.

Therefore, in my mind, summary judgment was improper at the time-juncture when it was granted and I respectfully dissent from the majority opinion affirming the trial court's decision. There were, and are, genuine issues of material fact. Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue should be resolved against the movant. *American Indian Agricultural Credit v. Fort Pierre Livestock, Inc.*, 379 N.W.2d 318 (S.D.1985).

SABERS, Justice (dissenting).

I dissent for all of the following reasons:

1. SUMMARY JUDGMENT WAS IMPROPER BECAUSE DEFENDANTS NEVER ESTABLISHED THAT THERE WERE NO DISPUTED ISSUES OF MATERIAL FACT

Defendants imply that plaintiffs' response to the motion for summary judgment was deficient because plaintiffs did not file affidavits as provided for in SDCL 15–6–56(e).

> Since the purpose of summary judgment is to pierce the allegations in the pleadings ... the claimant, as a practical matter almost always will file supporting affidavits. Moreover, whenever he does file affidavits, Rule 56(e) requires that the opposing party must do likewise or summary judgment, if appropriate, will be entered against him. Thus, the claimants' decision on this matter in fact may dictate the character of the defending party's response to the motion.

10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2719, at 3 (1983).

Defendants presented no affidavits nor did they premise the allegation in their motion "that there is no genuine issue of material fact and these defendants are entitled to judgment as a matter of law" on any specific factual references.[1] Neither defendants' motion nor their brief contain any statement of undisputed facts or even a statement of material facts. Defendants moving papers refer to no depositions, no answers to interrogatories, nor to any of the facts established in the record. Defendants argue that the court need look no further than plaintiffs' allegations and the *Kanaly* case to find that the contract as alleged by plaintiffs, if breached, was breached as a result of legislative action over which these defendants had no control. As stated in *Federal Practice & Procedure, supra:*

> If the moving party's proof is less convincing, as in cases where he relies on his own testimony or has exclusive knowledge of the transaction the burden of providing evidence may never shift to the opponent.

10A Wright, Miller & Kane, § 2727, at 143. In summary judgment, the burden of proof is on the moving party to show clearly that there was no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Hamaker v. Kenwel-Jackson Machine, Inc.*, 387 N.W.2d 515, 517 (S.D.1986).

Plaintiffs responded to defendant's motion for summary judgment by delineating disputed issues of material fact. In asserting that the defendants were able to perform the contract obligations after passage of S.B. 221/1984, plaintiffs submitted that:

(1) location was a material term of the contract;

(2) money was available to support plaintiffs' educational programs either at Springfield or other locations; Section IV of S.B. 221 mandated the plaintiffs be given the opportunity to complete their courses of study, Sec-

---

1. Defendants admit at page 35 of their brief that "these defendants' answers to interrogatories ... are the *only* record evidence." (emphasis in original).

tion VIII appropriated money; Section VII provided for transfer of money to the defendants for purposes consistent with the legislation;

(3) USD/S was a branch of USD;

(4) the Board of Regents had entered an open-ended joint powers agreement with the Board of Charities and Corrections which allowed performance at the USD/S location (although this was not what plaintiffs prayed for) if defendants had wished;

(5) the legislature was not a sufficiently independent third party to allow an impossibility of performance defense;

(6) the defendants knew in July, 1983, that changes in the role and admission of USD/S were possible during the 1984 legislative session and that the defendants therefore assumed the risk of closure or failure of funding.

All of these factual assertions raised genuine issues of material fact as to defendants' ability to perform their contract with students after passage of S.B. 221.

"The successful movant must show by evidence of appropriate evidentiary quality, that every state of facts is excluded except that which entitled him to relief." *Sword v. Fox*, 317 F.Supp. 1055 (D.Va.1970), *reversed on merits* 446 F.2d 1091 (4th Cir. 1971). "The burden on the nonmoving party is not a heavy one; he is simply required to show specific facts as opposed to general allegations that present a genuine issue worthy of trial." 10A Wright, Miller & Kane, *supra*, § 2727, at 148.

## 2. SUMMARY JUDGMENT WAS IMPROPER BECAUSE DEFENDANTS RAISED ISSUES IN THEIR TRIAL COURT REPLY BRIEF PRECLUDING RESPONSE BY PLAINTIFFS

Students were under no obligation to presuppose that the trial court would go be-

yond the rules and consider issues not addressed in the initial summary motion.

The court may enter judgment on a ground not mentioned in the motion if the parties have had an adequate opportunity to argue and present evidence on that point and summary judgment is otherwise appropriate.

10A Wright, Miller & Kane, *supra*, § 2719, at 15.

The first time plaintiffs noticed that the trial court was considering issues raised in the reply brief was upon receipt of the memorandum opinion. Plaintiffs immediately moved for reconsideration and an opportunity to provide additional evidence, which motion the trial court denied. Students labeled this a game of "summary judgment by ambush." However labeled, this practice does violence to the rules of procedure and unfairly keeps the plaintiffs from receiving the full and fair hearing to which they are entitled under the constitution of the State of South Dakota.[2] This court should not approve such procedure.

## 3. SUMMARY JUDGMENT WAS IMPROPER BECAUSE THE TRIAL COURT WENT BEYOND THE AUTHORITY OF SDCL 15-6-56 AND MADE FINDINGS OF FACT IN ORDER TO GRANT SUMMARY JUDGMENT TO DEFENDANTS

When applying Rule 56(c) standard, the judge cannot summarily try the facts; his role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers seem more plausible than those tendered in opposition.... [I]f the evidence presented on the motion is subject to conflicting interpretations or reasonable men might differ as to its significance, summary judgment is improper.

10A Wright, Miller & Kane, *supra*, § 2525, at 104–109.

---

**2.** Art. VI., § 6, South Dakota Constitution provides in part:

"The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, ..."

The trial court found (1) that a contract existed, (2) that it was only of one semester's duration, (3) that defendants had capacity to contract for a longer term but didn't, (4) that location was a material term of the contract, (5) that continued funding was a condition precedent to the contract, and (6) that defendants did not assume the risk of nonappropriation.

The trial court further summarily found that the legislature and the Board of Regents were independent parties, that defendants did not assume the risk of lack of funding, that the board provided all students with an opportunity and that USD/S courses were available at other schools. According to students, these are material factual findings which are highly disputed and are not supported by the record. The trial court does not have discretion under SDCL 15–6–56 to resolve disputed factual issues on a summary judgment motion. The trial court has only the power to determine whether such issues exist. Having identified such issues, summary judgment is precluded.

4.  SUMMARY JUDGMENT WAS IMPROPER BECAUSE DEPOSITIONS OF MICHELLE TAPKEN, DAVID LORENZ AND JOSEPH McFADDEN ARE PART OF THE RECORD ON APPEAL AND THEIR TESTIMONY ESTABLISHES GENUINE ISSUES OF MATERIAL FACT

The depositions of these parties raise disputed issues of material fact. Whether they were filed and available for the trial court's consideration is unclear from the record. However, the depositions were taken before the trial court made its decision and they are included in the certified record on appeal. *See:* SDCL 15–26A–53.

5.  THE TRIAL COURT ERRED IN HOLDING THAT SENATE BILL 221/1984 MADE IT IMPOSSIBLE FOR DEFENDANTS TO PERFORM THEIR CONTRACT OBLIGATIONS TO PLAINTIFFS

S.B. 221 does not provide the defendants with an impossibility of performance defense because it contains no language that can be in any way construed to direct the Board of Regents to terminate the educational program in which the USD/S students were enrolled. In fact the converse is true. By the express language of Section IV of the act, the Board of Regents was directed to carry on the educational endeavors begun at USD/S to insure that each of the students enrolled in the program or courses of study could complete their course of instruction at other institutions of higher education, at post-secondary vocational schools, or at a combination thereof through articulation agreements. Moreover, the legislature appropriated money to support that directive and also included Section VIII of the act which allowed the transfer of monies among and between the various governing entities involved to effect the purposes of the act. Construing these facts in a light most favorable to the students, the holding of impossibility of performance cannot be sustained.

The trial court held "although USD/S is a branch of the University of South Dakota at Vermillion this does not mean that the board had the obligation to take all of the programs offered at Springfield and to continue them at the Vermillion campus." The trial court cited no authority for this proposition. However, legal authority for the exact opposite conclusion was close at hand. Section IV, S.B. 221 provides, in part,

The Board of Regents and the Board of Vocational Education shall take all necessary steps to insure that all students presently enrolled at the University of South Dakota at Springfield shall have the opportunity to complete their courses of study in South Dakota at other public post-secondary schools, public higher education institutions or a combination thereof through articulation agreements. Board of Regents shall include a baccalaureate program of vocational education within at least one of the institutions under its control.

6. THE TRIAL COURT FURTHER ERRED IN HOLDING AS A MATTER OF LAW THAT THE CONTRACT BETWEEN PLAINTIFFS AND THE STATE WAS ONLY FOR ONE ACADEMIC TERM WHEN THAT ISSUE INVOLVED GENUINE DISPUTED ISSUES OF MATERIAL FACT

In support of the trial court's decision, defendants urge the "disclaimer" in the USD/S catalog which states that the document is "not a contract nor an offer to contract." Defendants claim because the catalog is "subject to change without notice" that any contractual obligation must simply be of one semester's duration. Defendants further claim that "any contract to be performed was not to be performed within one year." Students also rely upon the catalog. On page one of the USD/S catalog, it is stated that if a student chooses he can graduate under the terms and provisions of the catalog at the time he entered.

In *Marquez v. University of Washington*, 32 Wash.App. 302, 648 P.2d 94 (1982), *cert. denied*, 460 U.S. 1013, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983), the singular reference to academic aid contained in a prelaw handbook was definite enough to form a part of the student's contract with the law school. 648 P.2d at 96. However, the court went on to say that while *some* elements of contract law are used and should be used in the analysis of the relationship between the student and the university, this does not mean that "contract law" must be rigidly applied in all its aspects, nor is it so applied where the contract analogy is extensively adopted. *Id.*, quoting *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), *quoting* with approval from *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir.), *cert. denied*, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975).

Under the *Marquez* rationale, both the students and defendants in the instant case raised genuine issues of material fact concerning the length of the contract and its terms. Although the *Marquez* court held that the construction of an implied contract between a student and university, and the legal effect of its terms presented law questions appropriate for summary disposition, 648 P.2d at 97, the existence of a contract, its nature and terms are questions of fact. *Dahly Tool Co. v. Vermont Tap & Die Co.*, 561 F.Supp. 600 (D.Ill. 1982); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933 (D.N.Y.1983). The issue of the existence of an implied agreement is factual. *Golden Plains Feedlot, Inc., v. Great Western Sugar Co.*, 588 F.Supp. 985 (D.S.D.1984). Therefore, this issue was inappropriate for summary disposal.

7. THE TRIAL COURT FURTHER ERRED IN HOLDING AS A MATTER OF LAW THAT DEFENDANTS WERE ENTITLED TO QUALIFIED GOOD FAITH IMMUNITY WHEN THAT ISSUE INVOLVED GENUINE DISPUTED ISSUES OF MATERIAL FACT

Students urge that they have made a showing that their rights were clearly established at the time in question and the granting of summary judgment on the issue of qualified good faith immunity was inappropriate. For these reasons and for all the reasons previously set forth in this dissent, especially the language of S.B. 221 which requires that the Board of Regents "shall take all necessary steps to insure that all students presently enrolled at the University of South Dakota at Springfield shall have the opportunity to complete their course of study in South Dakota ...," I respectfully submit that qualified good faith immunity was not available to the Regents.

It is preposterous for the Regents to argue good faith immunity in light of S.B. 221 which dictated the exact opposite. The Bill mandates performance in the form of a comparable educational curriculum for the USD/S students. It does not mandate im-

munity. S.B. 221 requires performance—it does not provide either immunity or an impossibility of performance defense.

Accordingly, I would reverse and remand for a jury trial[3] to determine whether the Regents performed in accordance with the mandate of this legislation.

---

**3.** It is interesting to note that according to the *Benchmark,* (1985), the annual report of the South Dakota Unified Judicial System, a mere 95 civil jury trials were reported in 1985. This amounts to 2.7 per circuit court judge per year; 1.4 per county per year; and 1.8 per week in the State of South Dakota. *Id.* at 38–39, Tables 13 and 14. I respectfully submit that summary judgment has improperly replaced civil jury trials in this state despite the mandate of Art. VI., § 6, of the South Dakota Constitution cited *supra*.